This Court granted certiorari in this case to review the following question: Does a person have a constitutional right to possess child pornography in the privacy of his own home?
Petitioner, Robert E. Felton, was indicted for possession of child pornography. Ala. Code 1975, § 13A-12-192(b). Based upon his plea of guilty — that he did knowingly possess a film entitled "Teen Foreign," admittedly obscene matter as described in § 13A-12-192(b) — Felton was sentenced to imprisonment for six years.
Petitioner appealed to the Court of Criminal Appeals and that Court affirmed. Felton v. State, 526 So.2d 635 (Ala.Cr.App. 1987).
We have carefully reviewed petitioner's constitutional challenge to Alabama's Child Pornography Statute, and we have given special attention to his argument that this case is controlled by Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243,22 L.Ed.2d 542 (1969), wherein the United States Supreme Court held "that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime."394 U.S. at 568, 89 S.Ct. at 1249. In our opinion, Stanley is not controlling, because Stanley did not deal with the right of a state to criminalize the private possession of childpornography.
As pointed out in the opinion of the Court of Criminal Appeals, the Supreme Court of Ohio, in State v. Meadows,28 Ohio St.3d 43, 503 N.E.2d 697 (1986), was confronted with the same issue presented here; that court held that an Ohio statute, which criminalized the knowing, private possession of materials that showed a minor participating or engaging in sexual activity, masturbation, or bestiality, did not violate the First Amendment to the Constitution of the United States, as made applicable to the states by reason of the Fourteenth Amendment.
In Meadows, Chief Justice Celebrezze, writing for a majority of the Court, stated:
 "The precise question of law posed by appellant's sole proposition of law is whether the General Assembly's criminalization of mere private possession of materials which show minors participating or engaging in sexual activity, masturbation, or bestiality violates the First Amendment to the United States Constitution, as made applicable to the states by reason of the Fourteenth Amendment. Although the nation's highest court has not entertained this exact issue, that court's pronouncements concerning related settings are germane to the instant cause. We find that 'much of the reasoning in these cases is instructive and provides guidance regarding the scope of constitutional restrictions, the competing interests involved, and the attendant public policy concerns.' Gutter v. Dow Jones, Inc.
(1986), 22 Ohio St.3d 286, 288, 490 N.E.2d 898. In light of the constitutional implications and competing societal interests advanced, we believe that Mr. Justice Cardozo's apt observation that '[a] Judge must be a historian and prophet all in one' is descriptive of our task in this unique case."
The court then discussed the holding in Stanley, and the holdings of cases decided after Stanley. The court then wrote:
 "Thus, Stanley, has always stood for — and still stands for — the proposition that the state may not, consistent with the First Amendment, regulate the mere private possession of material in one's own home merely because it is obscene. However, it is also significant to our inquiry that Justice Marshall cautioned at fn. 11 of his majority opinion in Stanley that the court did not '* * * mean to express any opinion on statutes making criminal possession of other types of printed, filmed, or recorded materials.' (Emphasis added [in Meadows].) Id. 394 U.S. at 568, 89 S.Ct. at 1249. Rather, it was recognized in the Stanley opinion that there could be *Page 640 cases involving other subjects where '* * * compelling reasons may exist for overriding the right of the individual to possess those materials.' (Emphasis added [in Meadows].) Id.
Appellant herein argues that the state's interest in this instance constitutes the 'compelling reasons' or 'limited circumstances' envisioned by the Stanley court as justifying government intrusion. It is notable that in Stanley the state of Georgia unsuccessfully asserted, inter alia, its rights to protect the individual possessor's mind from the effects of obscenity and to prevent future deviant sexual behavior linked to exposure to obscene materials. Id. at 565-566, 89 S.Ct. at 1248. If appellant herein was raising the same interest, our query would be over because we could simply apply the solid notions of individual liberty set forth in the Stanley decision to this set of circumstances.
 "However, in the instant case the state argues that Ohio's legislature is justified in barring possession of materials which visually depict minors engaging in sexual activity because society's interest in safeguarding the privacy and physical and psychological well-being of its children is paramount.
 "Because of the great respect historically accorded to free speech, it is essential that we ascertain the precise nature of the state's interest in protecting its children. Our task, then, is to ascertain if these interests are compelling and, if so, whether they also outweigh the fundamental right to be left alone in one's home which was so clearly articulated in Stanley, et al.
 "To aid in our understanding of the state's impetus for the eradication of child pornography through the banning of its possession, as well as the competing interests involved, we turn to the more recent Supreme Court pronouncement in New York v. Ferber (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113. Against a backdrop of public indignation over the proliferation of child pornography, the Ferber court defined a new category of unprotected speech. In contrast to Stanley, Ferber dealt specifically with child pornography, not obscenity involving only adults, and upheld the constitutionality of a criminal statute outlawing the promotion of sexual performances by minors through the distribution of material depicting such performances. As such, 'the Court unanimously upheld a New York criminal statute that bans the distribution of nonobscene material depicting sexual conduct by children.' The decision essentially holds that states can
constitutionally define the visual depiction of sexual conduct by children as obscenity without having to satisfy the threshold constitutional test for determining whether the material is obscene. The court ruled that the state's 'compelling' interest in eliminating child pornography was sufficiently great to allow the states to bypass the test for adult obscenity stated in Miller v. California (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. Henceforth, states may automatically declare such visual depictions of sexual conduct by minors to be obscene and, as such, unprotected by the First Amendment. The Ferber court did not consider the propriety of state criminal sanctions concerning the final stage of the child pornography cycle, i.e., private possession. Nevertheless, the decision does touch on the competing interests involved in this case, [and] the court's discussion of the state's goals is instructive. In recognizing New York's 'compelling' interest of safeguarding the physical and mental well-being of its children, the court explained that '[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.' Id. 458 U.S. at 757, 102 S.Ct. at 3355.
 "In this vein, the Ferber court set forth a number of important and legitimate state objectives accomplished by the eradication of child pornography. For instance, the court observed that '[t]he legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of the child.' Id. at 758, *Page 641 102 S.Ct. at 3355. The Ferber court found that the existence of photographs 'depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.' Id. at 759, 102 S.Ct. at 3355.
 "The court also discerned that state efforts directed at the banning of production would not adequately solve the dilemma. The hidden reality of the child pornography industry makes it 'difficult, if not impossible, to halt the exploitation of children by pursuing only those who produce * * *.' Id. at 759-760, 102 S.Ct. at 3356. In this regard, we note that the possessor's desire to maintain depictions of child abuse also 'provide[s] an economic motive for and * * * [is] thus an integral part of the production of such materials, an activity illegal throughout the Nation.' Id. at 761, 102 S.Ct. at 3356. A flourishing home market for such abusive materials will help guarantee that there will be additional victimization of children. Cf. id. at 761-762, fn. 13, 102 S.Ct. at 3357, n. 13.
 "Against these substantial overriding interests we believe that, like the promotion stage of the child pornography cycle addressed in Ferber, the value of permitting possession of 'photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not de minimis.' Id. at 762, 102 S.Ct. at 3357.
 "Unlike the obscene materials considered in Stanley, Miller, et al., child pornography involves, by its nature, the physical, mental and sexual abuse, seduction and harmful exploitation of children. The depictions ought to be banned by the state are but memorializations of cruel mistreatment and unlawful conduct. Additionally, such material would continue to exploit and victimize the children shown by haunting them in the future. Ferber at 759, fn. 10, 102 S.Ct. at 3355, fn. 10. We believe the interest of the state in protecting the privacy, health, emotional welfare and well-rounded growth of its young citizens, together with its undeniable interest of safeguarding the future of society as a whole, comprise exactly the type of 'compelling reasons' justifying a 'very limited' First Amendment intrusion envisioned by the Stanley court. At the same time, the cost to the individual possessor's right of free speech, privacy and thought, caused by the state's banning of visual mementos from an episode of sexual abuse of a child, is slight. Moreover, the content value of such material is trifling and alternative means of simulation exist."
The Supreme Court of the United States refused to review the decision of Ohio Supreme Court in the Meadows case. Meadows v.Ohio, ___ U.S. ___, 107 S.Ct. 1581, 94 L.Ed.2d 771 (1987). Other state courts have also held that a state has a right to control the private possession of material that is classified as child pornography. See In re Duncan, 189 Cal.App.3d 1348,234 Cal.Rptr. 877 (1987); State v. Lodge, 42 Wn. App. 380,711 P.2d 1078 (1985); contra, Delaware v. Dittie, [Cr.A.IN 86-05-0043] (Del.Super.) [Available on WESTLAW, 1987 WL 8698], affirmed, 528 A.2d 875
(Del. 1985). Commonwealth v. Oakes, 401 Mass. 602,518 N.E.2d 836 (1988).
Based upon the reasoning in Meadows, we are of the opinion that the judgment of the Court of Criminal Appeals is due to be affirmed. The state's interest in protecting the privacy, health, emotional welfare, and well-rounded growth of its citizens who are "under the age of 17 years," § 13-12-192(b), together with its interest in safeguarding the future of society as a whole, are the type of "compelling reasons" justifying a " 'very limited' First Amendment intrusion envisioned by the Stanley Court." Meadows, supra.
Having addressed petitioner's constitutional claim, and having found no merit in it, we now address petitioner's contention that the search and seizure made at his *Page 642 
residence violated rights guaranteed to him under the Fourth Amendment to the Constitution of the United States. We have reviewed petitioner's arguments, and have considered them, but we are of the opinion that the judgment of the Court of Criminal Appeals is also due to be affirmed as to the search and seizure issue.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.