McMILLAN, Presiding Judge.
The appellant, Kenneth Ronald Lanham, appeals from his conviction of one count of possessing obscene matter containing a visual reproduction of a person under 17 years of age, a violation of § 13A-12-192, Ala.Code 1975. After a traffic accident on October 2, 2002, a state trooper found Lanham in possession of a videotape entitled Havirov Sport II, which contained images of nude children and teenagers. The trial court reviewed the videotape and concluded that it was “obscene” under § 13A-12-192. After Lanham reserved the right to appeal the issue whether the tape was obscene, he entered a guilty plea.[1] The trial court sentenced him to one year and one day’s imprisonment and ordered him to pay a $1,000 fíne, a $50 crime victims’ assessment, court costs, and attorney fees.
Havirov Sport II is a videotape apparently filmed in formerly Czechoslovakia. When the tape begins, a narrator states that one of the new “personal and political freedoms” Czechoslovakia has enjoyed since the overthrow of communism is engaging in “naturism.” A scrolling text indicates that “European naturism” and the “naturist lifestyle” will be depicted. Still photographs of nude children, teenagers, and adults engaged in outdoor activities appear, followed by photographs of articles written in a foreign language. Next, a map of Czechoslovakia is displayed, overlaid with text that recounts a cursory history of the country. The narrator concludes the introduction by inviting the viewer to “grab your favorite beverage, sit down in your favorite chair, and enjoy” the “really unusual and wonderful footage” his “international naturist documentary company” has obtained.
The next portion of the videotape consists of live shots of nude adults, teenagers, and children. All of their activities take place on concrete sidewalks outside a building the narrator describes as an elementary school that is closed for the summer. The subjects play badminton, fris-bee, and volleyball and splash in a small, above ground wading pool. They also roast food on skewers, eat, play the guitar, and sing. The videotape offers no expla *1285 nation of who the people are or why they may have adopted naturist beliefs or practices.
Many of the camera shots in this portion of the videotape focus on only one or two individuals. All of them are completely nude, and their breasts, buttocks, pubic areas, and male genitalia are clearly visible. It is undisputed that many of these subjects are under 17 years of age. This part of the tape includes close shots of several young boys with exposed penises, young girls walking near the camera with their breasts and pubic areas fully exposed, and numerous shots that pan slowly across the breasts and buttocks of children and teenagers. No explanation of the naturist lifestyle accompanies any of these scenes. This portion of the tape concludes with the narrator thanking the participants.
The next portion of the videotape is described by the narrator as a “get-together.” It opens with adults, teenagers, and children dancing inside what appears to be a restaurant. Again, everyone is nude, and many are clearly under 17. During the dancing, the camera frames the pubic areas, breasts, and buttocks of several young girls. The penises of several young boys also appear in the foreground of a number of shots. At the end of this portion of the videotape, several subjects are shown lying nude on towels in what appears to be a parking lot. Although the videotape is nearly one hour in length, the naturist lifestyle and movement are not explained. After the credits, scrolling text offers approximately three dozen additional videotapes for sale.
I.
The appellant contends that Havi-rov Sport II is not obscene because, he says, it does not depict “genital nudity or other sexual contact” as defined under Alabama statutes. He concedes that the tape contains images of nude individuals who are under 17 years of age, but he argues that they are “simply playing games with their families at a nudist resort” and that their genital areas are shown “[ajlmost by necessity.” He argues that the element of “lewd[ness]” is absent from the genital nudity depicted in the video and that the element of “apparent sexual stimulation or gratification” is absent in any incidental touching. He also argues that there is no “lustful, lascivious, or lecherous behavior” depicted and that “mere nakedness” must be coupled with such behavior in order to be “lewd” under the applicable statute. The appellant further argues that there is no display of children’s genitals “designed to arouse or satisfy the sexual cravings of a voyeur” and that there are “no close-ups of genitals alone” on the videotape.
Section 13A-12-192(b), Ala.Code 1975, provides:
“Any person who knowingly possesses any obscene matter containing a visual reproduction of a person under the age of 17 years engaged in any act of sadomasochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct shall be guilty of a Class C felony.” [ (Emphasis added.) ]
In Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the United States -Supreme Court established a three-part test for determining whether material is “obscene” and therefore subject to state regulation. In New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Court modified the Miller test to allow states greater leeway in regulating child pornography. After Ferber was announced, the Alabama Legislature rewrote the child-pornography statutes, including § 13A-12-190(13), Ala. *1286 Code 1975, which defines the term “obscene.”
Under the new definition, the Miller test applies only to depictions of “breast nudity”; it does not apply to depictions of the other six forms of sexual conduct specified in § 13A-12-197, including “genital nudity.” Poole v. State, 596 So.2d 632, 638 (Ala.Crim.App.1992). “Under new § 13A-12-190(13), material depicting children engaged in acts involving these forms of sexual conduct need only lack ‘serious literary, artistic, political, or scientific value’ ” to be proscribed. Id. “ ‘Obscene,’ as applied to these materials, simply does not mean ‘obscene under the Miller test.’ ” 596 So.2d at 639.
Section 13A-12-190(11) defines “genital nudity” as “[t]he lewd showing of the genitals or pubic area.” Because the term “lewd” is not defined by statute, it must be given its “ ‘natural, plain, ordinary, and commonly understood meaning.’ ” Perry v. State, 568 So.2d 339, 342 (Ala.Crim.App.1990), quoting Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). “ ‘Lewd’ ” is defined as “ ‘[o]bscene, lustful, indecent, lascivious, lecherous.’ ” 568 So.2d at 342, quoting Black’s Law Dictionary 817 (rev. 5th ed.1979).
“A ‘lewd showing of the genitals' does not require any overt act by the child depicted. The child depicted is not required to have assumed a sexually inviting manner, nor is it required that the child even be aware that the depiction is being produced. ‘Lewdness,’ within ‘the context of the statute applied to the conduct of children ... is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles .... The picture of a child “engaged in [genital nudity]” ... as defined by [new § 13A-12-190(11) ] is a picture of a child’s sex organs displayed [lewdly]— that is, so represented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.’ ”
Poole v. State, 596 So.2d at 640. (Citations omitted.)
Havirov Sport II consists of almost entirely of images of nude individuals. The appellant argues that it depicts families at a nudist resort participating in various activities and games. However, the “families” on the videotape include many children and teenagers and adults. The nudist “resort” is a sidewalk, parking lot, or small enclosed area similar to that in an apartment complex, rather than a recreational area or retreat. Activities and games are' depicted on the videotape, but it is clear from the framing and selection of the shots that the focus is the children’s bodies, rather than their activities.
In Poole, this court found that videotaped images of young boys urinating depicted “children engaged in genital nudity.” 596 So.2d at 640. The images in Havirov Sport II are essentially similar. The repetitive and gratuitous display of the children’s breasts, buttocks, pubic areas, and genitalia indicate that the purpose of the videotape is to appeal to the sexual cravings of the pedophile or voyeur. A further indication of the true purpose of Havirov Sport II is the announcer’s statement that he has some “really unusual” footage for the viewer to enjoy. “Unusual” is often a code word to indicate that a seller is offering material depicting children. See Kenneth V. Lanning, Child Molesters: A Behavioral Analysis 67 (4th ed., National Center for Missing and Exploited Children, 2001). Another indication is that the titles of several of the videotapes offered for sale at the end of Havirov Sport *1287 II include the word “[fjamily.”[2] The word “family” is often a code word for material that contains images of young children. Id. The appellant, citing Pierce v. State, 292 Ala. 473, 296 So.2d 218 (1974), contends that this court should make an independent determination regarding whether Havirov Sport II is obscene. However, Pierce involved adult obscenity and the Miller test, rather than child pornography. On review of issue whether a visual reproduction of child genital nudity is obscene and lacks serious literary, artistic, political, or scientific value the appellate court should give deference to the decision made by the finder of fact. See Cole v. State, 721 So.2d 255 (Ala.Crim.App.1998)(review of local community standards of obscenity not necessary to convict defendant of producing obscene matter containing reproduction of a child unless the depictions include breast nudity); Poole v. State, 596 So.2d at 640 (whether videotape showing child’s genitals lacked serious literary, artistic, political, or scientific value would have ultimately become question of fact for the jury). Here, the trial court properly determined that Havirov Sport II is “obscene” under the applicable statutes.
II.
The appellant also contends that, even if Havirov Sport II contains genital nudity or prohibited conduct, it is not “obscene” as that term defined by § 13A-12-190(13) because, he says, it does not lack serious literary, artistic, political, or scientific value. He argues that depictions of nudity, without more, generally constitute protected expression; that such depictions must be judged by a “reasonable person” standard; and that numerous people believe that a “nudist” or “naturist” lifestyle is more healthy than a “clothed” lifestyle. He argues that many people have joined nudist and naturist organizations to adopt such a lifestyle; that the practice of “social family nudism” is a protected choice; and that photographs of persons, including children, who are participating in the nudist lifestyle are not without serious literary, artistic, political, or scientific value.
In New York v. Ferber, 458 U.S. at 762, 102 S.Ct. 3348, the United States Supreme Court recognized that states have a “compelling” interest in safeguarding the physical and psychological well-being of minors and in preventing their sexual exploitation and abuse. The Court noted that it was “unlikely that visual depictions of children ... lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work.” 450 U.S. at 762-63, 101 S.Ct. 1451. In Ex parte Felton, the Alabama Supreme Court reached a similar conclusion: “ ‘[W]e believe that, like the promotion stage of the child pornography cycle addressed in Ferber, the value of permitting possession of “photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not de minimis.” ’ ” Ex parte Felton, 526 So.2d 638, 641 (Ala.1988), quoting State v. Meadows, 28 Ohio St.3d 43, 49-50, 503 N.E.2d 697, 703 (1986), quoting in turn Ferber, 458 U.S. at 762, 102 S.Ct. 3348.
Havirov SpoH II uses the nude images of children to appeal to the sexual urges of voyeurs and pedophiles. The tape lacks literary merit: the narration and text are subordinate to the visual images and have no real value in and of themselves. The tape also lacks artistic merit: the settings are dreary, the camera techniques unimaginative, and the scenes repetitive. The videotape does not express a significant political viewpoint, and it contains no infor *1288 mation of scientific value. The trial court therefore properly determined that Havi-rov Sport II is “obscene.”
AFFIRMED.
COBB, BASCHAB, and WISE, JJ„ concur. SHAW, J., concurs in the result, with opinion.

. A second count of possession of obscene matter and a count of misdemeanor possession of marijuana were nol prossed.

. The titles include “Family Paradise,” "Family Portraits,” and “Naturist Family Contest.”