MAIN, Judge.
Ronald Jay McFadden was convicted of one count of possession of obscene matter containing a visual reproduction of a person under the age of 17 years, a violation of § 18A-12-192(b), Ala.Code 1975, and one count of production of obscene matter containing a visual reproduction of a person under 17 years of age, a violation of § 13A-12-197, Ala.Code 1975.[1] This appeal followed.
In July 2005, during a routine visit to McFadden’s residence because McFadden was on probation for prior convictions, Probation Officer Cory Robbins of the Baldwin County Probation Office noticed that a lower kitchen cabinet door was ajar and that a pair of children’s underwear was in the cabinet. Probation Officer Robbins also discovered other items in the kitchen cabinets, including toys and children’s clothing. He contacted his supervisor, who gave him permission to search further. He also contacted Officer Connie King with the Foley Police Department. Probation Officer Robbins found depictions of nude children that he described as “numerous photos depicting young children, what would appear to be collages surrounded by adult genitalia.” (R. 49-50.) At that point, he detained McFadden and read him his Miranda[2] rights. McFadden denied knowledge of the items in his residence.
Officer King obtained a search warrant for the residence where he and other officers discovered children’s items, such as toys, videos, magazines, underwear, children’s books and parenting books, a growth chart depicting nude drawings of children, and numerous collage or montage exhibits.
I.
McFadden argues, as he did in the circuit court below, that the evidence was insufficient to sustain his convictions for possession of obscene matter and production of obscene matter. Relying on R.K.D. v. State, 712 So.2d 754 (Ala.Crim.App.1997), McFadden argues the collage or montage evidence was not “matter” because it is not a “live act, performance, or event.” See § 13A-12-190(12), Ala.Code 1975, a part of the Alabama Child Pornography Act § 13A-12-190 et seq., Ala.Code 1975 (“The ACPA”). Alternatively, McFadden argues that if the evidence is in fact “matter,” it is not “obscene”
As to the sufficiency of the evidence,
“In deciding whether there is sufficient evidence to support the verdict of *175 the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 868 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State.”
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
‘“In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.’ Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala.1985).
[[Image here]]
“ ‘ “The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches “a clear conclusion that the finding and judgment are wrong.” Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962).... A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). “[Wjhere there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.” Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).’ Granger [v. State], 473 So.2d [1137,] 1139 [ (Ala.Crim.App.1985) ].”
White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989).
The two-count indictment in 2005 charging McFadden tracked §§ 13A-12-192(b) and 13A-12-197, Ala.Code 1975. It is well settled that the statute in effect at the time a crime is committed governs the prosecution of that offense. See Minnifield v. State, 941 So.2d 1000, 1001 (Ala.Crim.App.2005) (noting that “the law in effect at the time of the commission of the offense controls the prosecution”); see also Hardy v. State, 570 So.2d 871 (Ala.Crim.App.1990) (noting that, unless otherwise stated in the statute, the law in effect at the time the offense was committed controls the offense). In 2005, § 13A-12-192(b), Ala.Code 1975, the statute under *176 which McFadden was indicted and convicted, stated:
“Any person who knowingly possesses any obscene matter containing a visual reproduction of a person under the age of 17 years engaged in any act of sadomasochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct shall be guilty of a Class C felony.”[3]
(Emphasis added.) In 2005, § 13A-12-197(a), Ala.Code 1975, provided, in pertinent part:
“Any person who knowingly films, prints, records, photographs or otherwise produces any obscene matter that contains a visual reproduction of a person under the age of 17 years engaged in any act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, breast nudity, genital nudity, or other sexual conduct shall be guilty of a Class A felony.”[4]
(Emphasis added.) “Obscene” was defined in 2005, in pertinent part, as follows:
“b. When used to describe matter that contains a visual reproduction of an act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct, such term means matter containing such a visual reproduction that itself lacks serious literary, artistic, political or scientific value.”
§ 13A-12-190(13)(b), Ala.Code 1975 (emphasis added).[5] The term “matter,” as used in this section in 2005, was defined as:
“[a]ny book, magazine, newspaper, or other printed material, or any picture, photograph, motion picture or electrical or electronic reproduction, or any other articles or materials that either are or contain a photographic or other visual reproduction of a live act, performance, or event.”
§ 13A-12-190(12), Ala. Code 1975.[6] We note that, at the time of the charged offenses, “visual reproduction” was not defined in the relevant Code sections. See § 13A-12-190, Ala.Code 1975; § 13A-12-192(b), Ala.Code 1975, § 13A-12-197, Ala. Code 1975.[7] “Genital nudity” is: “[t]he lewd showing of the genitals or pubic area.” § 13A-12-190(11), Ala.Code 1975. Because the term “lewd” is not defined by statute, it must be given its “ ‘natural, *177 plain, ordinary, and commonly understood meaning.’ ” Perry v. State, 568 So.2d 389, 342 (Ala.Crim.App.1990), quoting Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). “ ‘Lewd’ ” is defined as “ ‘[o]obscene, lustful, indecent, lascivious, lecherous.’ ” Perry, 568 So.2d at 342, quoting Black’s Law Dictionary 817 (5th ed.1979).
“A ‘lewd showing of the genitals’ does not require any overt act by the child depicted. The child depicted is not required to have assumed a sexually inviting manner, ... nor is it required that the child even be aware that the depiction is being produced_ ‘Lewdness,’ within ‘the context of the statute applied to the conduct of children ... is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles .... The picture of a child “engaged in [genital nudity]” ... as defined by [new § 13A-12-190(11) ] is a picture of a child’s sex organs displayed [lewdly] — that is, so represented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.’ ”
Poole v. State, 596 So.2d 632, 640 (Ala.Crim.App.1992). See also Lanham v. State, 888 So.2d 1283 (Ala.Crim.App.2004); Cole v. State, 721 So.2d 255 (Ala.Crim.App.1998). Additionally, § 13A-12-200.1(19), Ala.Code 1975, defines “produce” as to “[c]reate, make, write, file, produce, reproduce, direct, or stage.”
In examining the relevant statutes as they read at the time of the charged offenses and in considering the collage or montage exhibits, we also must apply the following principles of statutory construction and view the collages or montages in totality:
“ ‘ “[I]t is well established that criminal statutes should not be ‘extended by construction.’ ” ’ Ex parte Mutrie, 658 So.2d 347, 349 (Ala.1993) (quoting Ex parte Evers, 434 So.2d 813, 817 (Ala.1983), quoting in turn Locklear v. State, 50 Ala.App. 679, 282 So.2d 116 (1973)).
“ ‘A basic rule of review in criminal cases is that criminal statutes are to be strictly construed, in favor of those persons sought to be subjected to their operation, i.e., defendants. Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956).
“ ‘Penal statutes are to reach no further in meaning than their words. Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952).
“‘One who commits an act which does not come within the words of a criminal statute, according to the general and popular understanding of those words, when they are not used technically, is not to be punished thereunder, merely because the act may contravene the policy of the statute. Fuller v. State, supra, citing [Young v. State ], 58 Ala. 358 (1877).
“‘No person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused. Fuller v. State, supra.’
“Clements v. State, 370 So.2d 723, 725 (Ala.1979) (quoted in whole or in part in Ex parte Murry, 455 So.2d 72, 76 (Ala.1984), and in Ex parte Walls, 711 So.2d 490, 494 (Ala.1997)) (emphasis added).
“ ‘ “Statutes creating crimes are to be strictly construed in favor of the accused; they may not be held to apply to cases not covered by the words used .... ” United States v. Resnick, 299 U.S. 207, 209, 57 S.Ct. 126, 127, 81 L.Ed. 127 (1936). See also, Ex parte Evers, 434 So.2d 813, *178 816 (Ala.1983); Fuller v. State, 257 Ala. 502, 60 So.2d 202, 205(952).’
“Ex parte Jackson, 614 So.2d 405, 406 (Ala.1993) (emphasis added). ‘[T]he fundamental rule [⅛ ] that criminal statutes are construed strictly against the State. See Ex parte Jackson, 614 So.2d 405 (Ala.1993).’ Ex parte Hyde, 778 So.2d 237, 239 n. 2 (Ala.2000) (emphasis added). The ‘rule of lenity requires that “ambiguous criminal statute[s] ... be construed in favor of the accused.” ’ Castillo v. United States, 530 U.S. 120, 131, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000) (paraphrasing Staples v. United States, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)).”
Ex parte Bertram, 884 So.2d 889, 891-92 (Ala.2003).
“ ‘Moreover, “one ‘is not to be subjected to a penalty unless the words of the statute plainly impose it,’ Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 [ (1905) ]. ‘[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.’ United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221-222, 73 S.Ct. 227, 229-230, 97 L.Ed. 260 [ (1952) United States v. Campos-Serrano, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971).’
“Bridges, 493 F.2d at 923.
“ ‘Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning.’ Alabama Farm Bureau Mut. Casualty Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). The general rule of construction for the provisions of the Alabama Criminal Code is found in Ala. Code 1975, § 13A-1-6: ‘All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in section 13A-1-3.’ Among the purposes stated in § 13A-1-4 is that found in subsection (2): ‘To give fair warning of the nature of the conduct proscribed,’ ”
Carroll v. State, 599 So.2d 1253, 1264-65 (Ala.Crim.App.1992). In determining the proper application of a statute, we have a duty to “ ‘ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained’ ” Hunt v. State, 642 So.2d 999, 1028 (Ala.Crim. App.1993), aff'd, 642 So.2d 1060 (Ala.1994), quoting Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985); see also Rutledge v. State, 745 So.2d 912 (Ala.Crim.App.1999).
The record reflects that, along with children’s clothing, including children’s underwear, toys, and other children’s items, collage or montage exhibits were introduced at trial. The collage or montage exhibits found in McFadden’s residence contained pictures or photographs of naked and clothed children cut from catalogs, magazines, and other print mediums juxtaposing adult nude body parts, including genitalia, often engaged in sexual acts. Some of the photographs superimposed what appeared to be children’s unclothed bodies with naked adult body parts.[8]
*179 Applying the rules of statutory construction set forth above to the statutes in effect at the time of the commission of the offenses by McFadden, given the reason and necessity for the “ACPA” and the purpose sought to be obtained by the ACPA, considering this Court’s decision in R.K.D., supra, and reviewing the collages or montages as a whole, we conclude that the collage or montage exhibits contain reproductions of genital nudity of children in violation of §§ 13A-12-192(b) and 13A-12-197, Ala.Code 1975. The collages or montages, which include pictures or photographs of unclothed young children combined with adult sexual acts, are clearly obscene and in violation of the conduct proscribed by the ACPA. See §§ 13A-12-190(12) and (13), Ala.Code 1975.
Moreover, R.K.D. is factually distinguishable from this case. In R.K.D., the dispositive fact was that in the materials there the children were either hand-drawn or were not naked. Here, the children were completely naked, displaying genital nudity in some of the pictures or photographs that were incorporated into collages or montages, thereby meeting the definitions of “obscene” and “matter” under §§ 13A-12-190(12) and (13), Ala.Code 1975. The fact that the reproductions were included in collages or montages did not lessen the pornographic nature of the pictures or photographs. Accordingly, the evidence presented at trial was sufficient to establish a prima face case of the possession and the production of obscene matter containing a visual reproduction of a person under the age of 17 years. Thus, we uphold McFadden’s convictions against his evidentiary arguments.
II.
McFadden next argues that the collages or montages are protected by the First Amendment of the United States Constitution. McFadden claims that New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), and Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), retain First Amendment protections for the collage or montage exhibits.[9] The State counters that because the collage or montage evidence contained genital nudity, which amounted to child pornography, it should be afforded no First Amendment protection. This Court reviews such issues de novo. Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003).
In Lanham v. State, supra, this Court provided a history of the development of First Amendment doctrine regarding obscenity and child pornography and stated the following when considering whether depictions of child nudity in a videotape constituted protected expression:
“In Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the United States Supreme Court established a three-part test for determining whether material is ‘obscene’ and therefore subject to state regulation. In New *180 York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Court modified the Miller test to allow states greater leeway in regulating child pornography. After Ferber was announced, the Alabama Legislature rewrote the child pornography statutes, including § 13A-12-190(13), Ala.Code 1975, which defines the term ‘obscene.’
“Under the new definition, the Miller test applies only to depictions of ‘breast nudity’; it does not apply to depictions of the other six forms of sexual conduct specified in § 13A-12-197, including ‘genital nudity.’ Poole v. State, 596 So.2d 632, 638 (Ala.Crim.App.1992). ‘‘Under new § 13A-12-190(13), material depicting children engaged in acts involving these forms of sexual conduct need only lack “serious literary, artistic, political, or scientific value” ’ to be proscribed. Id. ‘ “Obscene,” as applied to these materials, simply does not mean “obscene under the Miller test.” ’ 596 So.2d at 639.
“Section 13A-12-190(11) defines ‘genital nudity’ as ‘[t]he lewd showing of the genitals or pubic area.’
[[Image here]]
“In New York v. Ferber, 458 U.S. at 762, 102 S.Ct. 3348, the United States Supreme Court recognized that states have a ‘compelling’ interest in safeguarding the physical and psychological well-being of minors and in preventing their sexual exploitation and abuse. The Court noted that it was ‘unlikely that visual depictions of children ... lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work.’ [Universities Res. Assn. v. Coutu,] 450 U.S. [754] at 762-63, 101 S.Ct. 1451 [67 L.Ed.2d 662 (1981) ]. In Ex parte Felton, the Alabama Supreme Court reached a similar conclusion: ‘ “[W]e believe that, like the promotion stage of the child pornography cycle addressed in Ferber, the value of permitting possession of ‘photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not de minimis.’ ” ’ Ex parte Felton, 526 So.2d 638, 641 (Ala.1988), quoting State v. Meadows, 28 Ohio St.3d 43, 49-50, 503 N.E.2d 697, 703 (1986), quoting in turn Ferber, 458 U.S. at 762, 102 S.Ct. 3348.”
888 So.2d at 1285-87.
After Ferber, the Supreme Court upheld a statute criminalizing the mere possession of child pornography. See Osborne v. Ohio, 495 U.S. 103, 111, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (“[T]he materials produced by child pornographers permanently record the victim’s, abuse. The pornography’s continued existence causes the child victims continuing harm by haunting the children in years to come.”). In Osborne, supra, the Supreme Court recognized that it was “surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.” 495 U.S. at 109-10. Osborne also observed that, after the Court’s decision in Stanley v. Georgia, 394 U.S. 557, 567, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), its earlier and seemingly inapposite holding “ ‘the value of permitting child pornography has been characterized as exceedingly modest if not de minimis.’ ” Osborne, 495 U.S. at 108, quoting Ferber, 458 U.S. at 762.
As with obscenity, the First Amendment does not protect pornography involving “actual” children. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 240, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); Ferber, supra. Before 1996, Congress de *181 fined child pornography as the type of depictions at issue in Ferber, that is, images created using actual minors. See 18 U.S.C. § 2252 (1994 ed.). The federal Child Pornography Prevention Action of 1996 (“CPPA”) retained that prohibition at 18 U.S.C. § 2256(8)(A) and added three other prohibited categories of speech, of which the first, § 2256(8)(B), and the third, § 2256(8)(D), were at issue in Ashcroft. 535 U.S. at 240-41. (“The CPPA ... is not directed at speech that is obscene; Congress has proscribed those materials through a separate statute. 18 U.S.C. §§ 1460-1466.... [T]he CPPA seeks to reach beyond obscenity ... [and] would reach visual depictions, such as movies, even if they have redeeming social value.”).[10] More particularly, in Ashcroft, the Supreme Court considered whether 18 U.S.C. §§ 2256(8)(B) and (D) could withstand constitutional scrutiny. The litigants did not challenge, nor did the Court speak to, the constitutionality of § 2256(8)(C), which speaks to the conduct involved in this case.
As to the sort of images embraced by § 2256(8)(B) of the CPPA, the Court noted that they “do not involve, let alone harm, any children in the production process.” Ashcroft, 535 U.S. at 241. Consequently, unless those images are also obscene, “virtual pornography” of that particular type is protected by the First Amendment. 535 U.S. at 240 (“As a general rule, pornography can be banned only if obscene, but under Ferber, pornography showing minors can be proscribed whether or not the images are obscene.”).
McFadden’s collages or montages are not the sort of “virtual pornography” described by the Court as falling within the scope of section 2256(8)(B), because these collages or montages involve real children. Images similar to those at issue here are addressed in § 2256(8)(C) of the CPPA, which “prohibits a more common and lower tech means of creating virtual images, known as computer morphing.” Ashcroft, 535 U.S. at 242. Similar to McFadden’s collages or montages, computer morphing involves altering photographs of actual children to make it appear that those children are engaged in sexually explicit conduct. See 535 U.S. at 242 (describing “computer morphing” as follows: “Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity”).
While the Ashcroft Court did not specifically address the constitutionality of *182 § 2254(8)(C)’s ban on that particular type of “virtual pornography,” it did note, in dictum, that “[a]lthough morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in Ferber.” Ashcroft, 535 U.S. at 242. That dictum strongly suggests that McFadden’s collages or montages are not protected by the First Amendment.[11]
Almost immediately after the Ashcroft decision was handed down, Congress crafted responsive legislation in 2003 (“the PROTECT Act”), which defined child pornography to include, in addition to images of “real” children engaged in sexually explicit conduct, see § 2256(8)(A), digital or computer-generated images that are “indistinguishable” from images of actual minors engaging in sexually explicit conduct, see § 2256(8)(B), and visual depictions that have been created or modified to appear as though an identifiable minor is engaged in sexually explicit conduct. See § 2256(8)(C). The definition of “morphed” child pornography as discussed in Ashcroft remained unchanged as between the CPPA and the PROTECT Act. See id.
McFadden’s collages or montages involved genital nudity and pornographic images of real children. In that regard, they implicate concerns identified in both Ferber and Ashcroft, insofar as a lasting record has been created of those children showing genital nudity and seemingly engaged in sexual conduct. See Felton v. State, 526 So.2d 635, 637 (Ala.Crim.App.1986), affirmed, 526 So.2d 638 (Ala.1988) (recognizing that “[t]he State’s interest in protecting its children from cruel, physical, emotional, and physiological abuse occasioned by forcing a child to be the subject of child pornography far outweighs the appellant’s interest in possessing such materials”). First, as noted above, the Supreme Court has not addressed whether collages or montages of the sort possessed and produced by McFadden are protected by the First Amendment. See Ashcroft, 535 U.S. at 242 (“Respondents do not challenge this provision, and we do not consider it.”). In fact, the Supreme Court suggested just the opposite. See, e.g., Ferber, supra. Whereas the Supreme Court considered the mere possession of virtual child pornography a “victimless” crime, the same cannot be said of McFadden’s possession and production of the pictures or photographs incorporated into the collages and montages. Although in the pictures being contested by McFadden live naked children were not made to engage in the particular activities displayed in the photographs, the images of real children were edited to appear as though the children were engaged in genital nudity and often sexual conduct. See § 13A-12-190(13), Ala.Code 1975. Although the children in the pictures or photographs incorporated into the collages and montages may belong to a different class of victims than children made to actually engage in sexual behavior in other forms of child pornography, the children in the collage or montage pictures *183 or photographs are nonetheless actual identifiable human victims, rather than computer-generated virtual images as discussed in Ashcroft. The underlying concerns that informed the Ferber decision, therefore, are implicated by the facts of this case in a manner in which they were not in Ashcroft. See Felton, supra (recognizing that “[t]he State’s interest in protecting its children from cruel, physical, emotional, and physiological abuse occasioned by forcing a child to be the subject of child pornography far outweighs the appellant’s interest in possessing such materials”). See also Rutledge, supra (construing child-pornography statute prohibiting possession of a “photographic or other visual reproduction” to include images stored on computers, computer discs, and the Internet). Displays of genital nudity of actual children, when presented in collage or montage form, as in this case, constitute child pornography and warrant no First Amendment protection. Accordingly, McFadden is not entitled to any relief on this claim.
III.
Based on the principles espoused by Ashcroft, supra, and its progeny, McFadden next argues that the statutes under which he was convicted, §§ 13A-12-192(b) and 13A-12-197, Ala.Code 1975, are unconstitutionally overbroad.
As this Court has consistently noted, the overbreadth doctrine applies to activities that are protected from prosecution by the First Amendment:
“ ‘ “ ‘The overbreadth doctrine derives from the First Amendment, see Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and serves to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally-protected rights of free speech, press, or assembly, see - e.g., Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).’ ” ’
“Elston v. State, 687 So.2d 1239, 1244 (Ala.Crim.App.1996) (quoting McCall v. State, 565 So.2d 1163, 1165 (Ala.Crim.App.1990)); accord Hyshaw v. State, 893 So.2d 1239, 1242 (Ala.Crim.App.2003).”
Lansdell v. State, 25 So.3d 1169, 1174 (Ala.Crim.App.2007), cert. denied, 25 So.3d 1183 (Ala.2009).
“According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech.” United States v. Williams, 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). The overbreadth doctrine is “strong medicine” to be used sparingly and only as a last resort. See Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). It should be ' used only when the overbreadth is not only real, but also “substantial ... judged in relation to the statute’s plainly legitimate sweep.” Osborne, 495 U.S. at 112. A challenge to a statute on the grounds of overbreadth is “the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [a]ct would be valid.” United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The fact that a statute might, under the right set of circumstances, be unconstitutional “is insufficient to render it wholly invalid, since we have not recognized an ‘overbreath’ doctrine outside the limited context of the First Amendment.” 481 U.S. at 745.
As they read in 2005, the challenged statutes proscribed “a visual reproduction of a child engaged in genital nudi *184 ty.” See § 13A-12-190(13), Ala.Code 1975; §§ 13A-12-192(b) and 13A-12-197, Ala.Code 1975. McFadden’s collages or montages are not protected by the First Amendment because they involved naked images of real or actual children. They implicate concerns identified in Ferber, supra, and Ashcroft, supra, and their progeny because a lasting record has been created of those children engaged in genital nudity. See, e.g., Perry v. State, supra (applying the holding in Ferber, and finding the ACPA pertaining to “breast nudity” not overbroad and constitutional); Fel-ton, supra (recognizing that a defendant has no constitutional right to possess child pornography in his home); Dannelley v. State, 397 So.2d 555, 567 (Ala.Crim.App.), writ denied, 397 So.2d 577 (Ala.1981), cert. denied, 454 U.S. 856, 102 S.Ct. 305, 70 L.Ed.2d 151 (1981) (providing that the evil the legislature intended to remedy in the ACPA was the sexual abuse of innocent and helpless children in front of a camera).
Furthermore, the legislature intended to prohibit the possession, production, and dissemination of child pornography in Alabama “by any means.” Rutledge, 745 So.2d at 916. Following Ferber, the legislature amended the ACPA, codified at §§ 13A-12-190 through -197, Ala.Code 1975, to further define and prohibit child pornography and to further provide for the trial of cases involving it. See Poole, supra. “It is evident that the Legislature, recognizing the need to protect innocent children from the dangers of child pornography, enacted broad legislation prohibiting the visual depictions of children involved in any type of sexual act.” Rutledge, 745 So.2d at 916.
We answer the question whether the challenged statutes overreach in the negative. McFadden urges us to hold that the collages or montages fail to depict visually sexual conduct by children or to memorialize acts of sexual abuse by children as required by Ferber, supra, and its progeny. McFadden’s brief, at p. 52. He claims there was never sexual abuse of innocent and helpless children in front of a camera. McFadden’s brief at p. 56. He asserts the collages or montages are merely images pasted together that convey the idea of sexually explicit conduct. McFadden’s brief at p. 60. We find McFadden’s argument unpersuasive, and we reject it. Both Ferber and Ashcroft emphasized that children are harmed not only through the actual production of pornography, but also by the knowledge of its continued circulation. We further note that the United States Supreme Court upheld a statute criminalizing the mere possession of child pornography. Osborne, 495 U.S. at 110-11. (“[T]he materials produced by child pornographers permanently record the victim’s abuse. The pornography’s continued existence causes the child victims continuing harm by haunting the children in years to come.”). The Alabama Supreme Court and this Court have consistently held likewise. See Felton; Rutledge, Perry, Dannelley.
Thus, §§ 13A-12-192(b) and 13A-12-197, Ala.Code 1975, which criminalize the possession and the production of collage or montage images of child pornography or child genital nudity created without filming or photographing actual sexual conduct on the part of an identifiable minor, but edited to appear as though the children are engaged in sexual conduct, do not violate the First Amendment. The definition of “obscene” and “matter” “precisely trackfs] the material held constitutionally proscribable in Ferber and Miller and its progeny: obscene material depicting (actual or virtual) children engaged in sexually explicit conduct, and any other material depicting actual children engaged in sexually explicit conduct.” Williams, 553 U.S. at 293, cit *185 ing Ashcroft, 585 U.S. at 245-246. (First Amendment does not protect obscenity or pornography produced with actual children). These prohibitions fall well within constitutional bounds because “[i]t is evident beyond the need for elaboration that a State’s interest in safeguarding the physical and psychological well-being of a minor is ‘compelling.’ ” Ferher, 458 U.S. at 756-57. Accordingly, McFadden’s over-breadth challenge must also fail.
IV.
Lastly, McFadden argues the collage or montage exhibits were improperly admitted into evidence.[12] He also argues the trial court erred in admitting items seized from his residence that are only generally characteristic to children, such as children’s clothing and children’s books.[13] We conclude that the trial court did not abuse its discretion by admitting the collage or montage evidence of child pornography and the other children’s items that were contested.
“ ‘The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.’ ” Barrett v. State, 918 So.2d 942, 946 (Ala.Crim.App.2005), quoting Ex parte hoggins, 771 So.2d 1093, 1103 (Ala.2000).
Rule 401, Ala.R.Evid., defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Although relevant evidence is admissible, Rule 402, Ala.R.Evid., it “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Rule 403, Ala. R.Evid.
“To be competent and admissible, evidence must be relevant — that is, evidence must tend to prove or disprove the issues before the jury. Rule 401, Ala. R. Evid. The determination of the relevancy and admissibility of evidence rests largely in the sound discretion of the trial judge. The trial judge is obliged to limit the evidence to that evidence that would be necessary to aid the fact-finders in deciding the issues before them, and to preclude evidence that is too remote, irrelevant, or whose prejudice outweighs its probative value. Loggins v. State, 771 So.2d 1070, 1077-78 (Ala.Crim.App.1999), aff'd, 771 So.2d 1093 (Ala.2000).”
Harrington v. State, 858 So.2d 278, 293 (Ala.Crim.App.2002).
McFadden filed motions in limine seeking to exclude various items, including the collages or montages, and children’s underwear, clothing, books, toys, newspaper articles and clippings reporting kidnapped and/or murdered children, and other children’s items. The trial court held a hearing and admitted most of the collages or montages and children’s items and excluded others when objected.to during trial. McFadden defended the charges against him by disclaiming knowledge of the presence of child pornography and children’s items and by arguing that the collages or montages failed to constitute child pornography in violation of the First Amendment.
*186 The trial court properly admitted the items. The collage or montage exhibits and the children’s items admitted were relevant to prove or disprove possession and production of child pornography. The collages and montages and children’s items were intermingled throughout McFadden’s house. Especially given that the State had to prove that McFadden “knowingly” possessed and produced child pornography and given his defenses of lack of knowledge and First Amendment protection, many of the items constituted physical evidence providing the jury with context. The jury is entitled to know the setting of the case and cannot be expected to make its determination without knowledge of the time, place, and circumstances of the acts that form the basis of the charge. See, e.g., Dean v. State, 54 Ala.App. 270, 807 So.2d 77 (Ala.Crim.App.1975) (permitting the defense psychiatrist, on cross-examination, to testify as to the qualifications and training of an absent psychiatrist was not improper, as the jury was entitled to know why the witness relied on the absent psychiatrist’s reports and also the basis of such reliance).
Moreover, any error in the admission of this evidence is harmless because many of the items could properly enter under Rule 404(b), Ala.R.Evid., as showing knowledge or intent. The more child pornography and children’s items that were present, the more likely McFadden had knowledge. Additionally, investigators often look for children’s items and child erotica as indicators of the presence of child pornography. These items show that McFadden acquired and displayed children’s items, which increases the probability that he knowingly possessed and produced child pornography. McFadden may disclaim knowledge and may argue that the collages and montages were afforded First Amendment protection, but the State should be able to introduce highly probative evidence of related acts that he knew of child pornography.
McFadden’s contention that the pictures or photographs should have been redacted and introduced piecemeal is likewise without merit. The composition of the collages or montages goes to the crux of the case. We find no abuse of discretion in the trial court’s admission of the collage or montage evidence or the children’s items.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur.

. The oral pronouncement at the sentencing hearing and the sentencing order differ. (C. 82-87; R. 281.) However, it appears that, pursuant to Alabama’s Habitual Felony Offender Act, the trial court sentenced McFadden to life imprisonment on the production-of-obscene-matter charge and 30 years’ imprisonment on the possession-of-obscene-matter charge, the sentences to run concurrently. See § 13A-5-9 et seq., Ala.Code 1975.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The legislature amended § 13A-12-192(b) effective June 1, 2006, by substituting the clause "that contains a visual depiction" for the phrase "containing a visual reproduction.”

. The legislature amended § 13A-12-197 effective June 1, 2006, and substituted the word • "depiction” for the word "reproduction.”

. The legislature amended § 13A — 12—190(13) effective June 1, 2006, in subparagraph b. by substituting the words "is a depiction” for the phrase "contains a visual reproduction.”

. The legislature amended the definition of "matter” in § 13A — 12—190(12) effective June 1, 2006. The definition now reads: "Any book, magazine, newspaper, or other printed material, or any picture, photograph, motion picture, video cassette, tape, record, digital video disc (DVD), video compilation, or electronic depiction in a comparable format, or an image, file, download, or other content stored, or reproduced by using a computer or electronic device or other digital storage, or any other thing, articles, or materials that either are or contain a photographic or other visual depiction of a live act, performance, or event."

.The legislature added the definition of "visual depiction” in § 13A— 12 — 190(15) effective June 1, 2006 when it substituted "depiction” for "reproduction.” "Visual depiction” is: "[a] portrayal, representation, illustration, image, likeness, or other thing that creates a sensory impression, whether an original, duplicate, or reproduction.” § 13A — 12—190(15), Ala.Code 1975.

. For example. State’s Exhibit 11 includes various cut-out photographs of clothed and unclothed young children combined with photographs of adult genitalia and photographs of the performance of adult sexual intercourse and oral sex. Some of the collages or montages in State’s Exhibit 11 include sexually explicit verbiage cut from magazines that is *179 pasted alongside cut-out children's photographs and cut-out photographs of adult sexual acts and body parts. State’s Exhibits 11 and 12 also include several photographs of the genitalia of what appear to be young children, which could have been taken from an anatomic, scientific, or medical reference, affixed above or near the cut-out photographs of adult genitalia and sexual acts. State’s Exhibit 13 showed collages or montages of adult males and females having sexual intercourse and oral sex juxtaposed with photographs of young children. (R. 103-13, 153-59, 164-65, 199-203.)

. We note that the statutes forming the basis for the charged offenses in Ferber, Osborne v. Ohio, 495 U.S. 103, 111, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), and Ashcroft prohibited the possession or distribution of child pornography.

. Section 2256(8)(B) prohibited “any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture,” that "is, or appears to be, of a minor engaging in sexually explicit conduct.” 535 U.S. at 241.
Section 2256(8)(C) of the CPPA covered any visual depiction modified to appear as though an actual minor was engaged in sexually explicit activity. In Ashcroft, the Supreme Court described this provision as prohibiting a more "common and lower tech means of creating virtual images,” known as "computer morphing.” 535 U.S. at 242. In lieu of creating original images, "morphing” allowed pornographers to "alter innocent pictures of real children so that the children appear to be engaged in sexual activity.” Id.
Section 2256(8)(D) defined child pornography to include any sexually explicit image that was "advertised, promoted, presented, described, or distributed in such a manner that convey[ed] the impression” that it depicted "a minor engaging in sexually explicit conduct.” "This provision prevent[ed] child pornographers and pedophiles from exploiting prurient interests in child sexuality and sexual activity through the production or distribution of pornographic material which is intentionally pandered as child pornography.” 535 U.S. at 242.

. In Ferber, the Court upheld the constitutionality of New York’s statutory ban on the distribution of materials that depict a sexual performance by a child. In reaching the conclusion that child pornography is outside the scope of the protections afforded by the First Amendment, the Court noted that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.” 458 U.S. at 757. In support of that conclusion, the Court observed: "The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children.... [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.” 458 U.S. at 759.

. Claim IV in McFadden’s brief.

. Claim V in McFadden’s brief.