The appellant, Charles Wayne Rutledge, was indicted for unlawful possession of obscene material with intent to disseminate, a violation of § 13A-12-192(a), Ala. Code 1975; unlawful possession of obscene material, a violation of § 13A-12-192(b); and unlawful production of obscene material, a violation of § 13A-12-197, Ala. Code 1975. The material in question contained visual reproductions of people under 17 years of age. Pursuant to a negotiated agreement, the appellant pled guilty to unlawful possession of obscene material with intent to disseminate and to unlawful possession of obscene material, and the State nol-prossed the unlawful production charge. In accordance with the terms of the agreement, the trial court sentenced him to concurrent terms of eight years in prison. At the time he entered his plea, *Page 914 
the appellant reserved the right to appeal the issues discussed in this opinion.
The following evidence established a factual basis for the appellant's guilty pleas. On July 16, 1997, Officer Mike Moon of the Gadsden Police Department obtained a search warrant for the appellant's house, authorizing a search for child pornography on computer diskettes, computer hard drives, videotapes, and photographs. (C.R. 23.) The search warrant was based on a statement made by Brian Lloyd, a computer technician who had visited the appellant's home in June 1997, to do some computer work for the appellant. He stated that, as he was deleting some of the unnecessary files on the appellant's computer so that he could install a new hard drive, he noticed a file entitled "models," which contained a picture of model Brooke Shields, who appeared to be very young and who was naked. He also stated that there were other similar pictures in the file, including pictures of children engaged in lewd sexual acts. (C.R. 27-28.) According to Lloyd, the appellant was open about his collection of pictures and offered to e-mail Lloyd some of the pictures and the passwords to a variety of Internet sites displaying such material. Lloyd told the appellant he was not interested.
Lloyd further stated that, on another occasion, he visited the appellant to watch a videotaped movie. However, when the appellant played the videotape, an explicit pornographic scene appeared on the television screen. The appellant offered to copy the videotape for Lloyd to view later, but Lloyd declined the offer. Lloyd stated that, during that time, the appellant talked about how he loved to take pictures of naked girls and showed Lloyd a picture of his girlfriend, who was naked. He stated that the appellant indicated that he appreciated girls with "small features." Based on Lloyd's statement, Officer Moon obtained the above-referenced search warrant. During the search, Officer Moon seized a computer hard drive and computer diskettes that contained pornographic material, the subjects of which were children.
 I.
The appellant challenges the propriety of his convictions under Alabama's child pornography statutes. Specifically, he argues that, because computer technology and the Internet were either not available or not widely used by the public when the statutes and the amendments thereto were enacted, the Legislature could not have intended for those statutes to encompass the conduct for which he was charged.[1] Therefore, he contends that he should not have been charged under those statutes and that his prosecution under those statutes was an ex post facto application of the law. For these reasons, he also argues that the trial court erroneously denied his motion to suppress the seized evidence.
Section 13A-12-192, Ala. Code 1975, provides:
 "(a) Any person who knowingly possesses with intent to disseminate any obscene matter containing a visual reproduction of a person under the age of 17 years engaged in any act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, breast nudity, genital nudity, or other sexual conduct shall be guilty of a Class B felony. Possession of three or more copies of the same obscene material is prima facie evidence of possession with intent to disseminate the same.
 "(b) Any person who knowingly possesses any obscene matter containing a visual reproduction of a person under the age of 17 years engaged in any act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, *Page 915 
genital nudity, or other sexual conduct shall be guilty of a Class C felony."
The term "matter," as it is used in § 13A-12-192, is defined as
 "[a]ny book, magazine, newspaper, or other printed material, or any picture, photograph, motion picture or electrical or electronic reproduction, or any other articles or materials that either are or contain a photographic or other visual reproduction of a live act, performance, or event."
§ 13A-12-190, Ala. Code 1975 (emphasis added). To address the appellant's argument that his conduct was not prohibited by § 13-12-192, Ala. Code 1975, we must determine what the Legislature intended to prohibit when it enacted the child pornography statutes.
In determining the proper application of a statute, we have a duty to "`ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained.'" Hunt v. State, 642 So.2d 999, 1028 (Ala.Cr.App. 1993), aff'd, 642 So.2d 1060 (Ala. 1994) (quoting Ex parteHolladay, 466 So.2d 956, 960 (Ala. 1985)); see also Gholston v.State, 620 So.2d 719 (Ala. 1993). In 1978, the Alabama Legislature enacted the first statutes prohibiting the possession, production, and dissemination of child pornography in Alabama, and we interpreted the legislature's intent in enacting those statutes as follows:
 "The necessity giving rise to the Alabama Child Pornography Act is that child pornography is different from obscenity in general. That is why the Legislature enacted separate legislation to deal with child pornography. Child pornography is different from general obscenity both in the degree of depravity involved and in the nature and extent of the harm involved. As for depravity, whatever may be said, and has been said, about what consenting adults do with and to each other, nothing so debases civilized society as the defilement of children for purposes of producing photographs like those involved in these cases. To state it simply, there are no further depths to which appellants could have lowered themselves.
 "As for the harm involved, what the United States Senate Judiciary Committee said in reporting out a bill which became the Federal Child Pornography legislation is on point:
 "`Such encounters cannot help but have a deep psychological, humiliating impact on those youngsters and jeopardize the possibility of healthy, affectionate relationships in the future. Indeed such children often grow up in an adult life of drugs and prostitution. Even more tragic, however, is the fact that many adults who were molested as children tend to become child molesters themselves, thus continuing the vicious cycle. S.Rep. No. 95-438, 95th Cong., 1st Sess. 9 (1977).'
 "Whatever the effects of obscene materials on those who view them, as the Senate Judiciary Committee concluded, `the use of children in the production of such materials is a form of child abuse.' Id. at 15.
 "The evil that the Legislature sought to remedy with Section 13-7-237 [now 13A-12-197] was not the effect of child pornography on those who viewed it — that evil was treated by the provisions outlawing the dissemination and sale of child pornography. What the Legislature sought to remedy with Section 13-7-237 is another evil, the evil that is involved in the very production of child pornography — the sexual abuse of innocent and helpless children in front of a camera.
 "Whether the producer of child pornography is motivated by a desire to satisfy his prurient interest or for pecuniary gain, the harm to the children he victimizes is the same. Manifestly, that is why the Legislature in Section 13-7-237 *Page 916 
deliberately prohibited the noncommercial production of child pornography as well as the commercial production of it."
Dannelley v. State, 397 So.2d 555, 570 (Ala.Cr.App.), cert. denied, 397 So.2d 577 (Ala.), cert. denied, 454 U.S. 856,102 S.Ct. 305, 70 L.Ed.2d 151 (1981). The Legislature recognized the evil inherent in the production of child pornography and sought to prohibit the production, by any means, of obscene matter displaying or depicting in any way a person under the age of 17 years engaged in or involved in any obscene act. See § 13-7-237, now codified as § 13A-12-197, Ala. Code 1975. The danger to children created by the production and dissemination of child pornography was viewed as a national concern, and the United States Supreme Court's decision in New York v. Ferber,458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), gave states "greater leeway in the regulation of pornographic depictions of children."458 U.S. at 756, 102 S.Ct. 3354. In 1984, two years after Ferber
was decided, the Legislature amended the child pornography act, codified at §§ 13A-12-190 through -197, to "further define and prohibit child pornography and to further provide for the trial of cases involving it." Act No. 84-285, 1984 Ala. Acts; see alsoPoole v. State, 596 So.2d 632 (Ala.Cr.App. 1992). It is evident that the Legislature, recognizing the need to protect innocent children from the dangers of child pornography, enacted broad legislation prohibiting the visual depictions of children involved in any type of sexual act.
In determining whether the child pornography statutes were meant to prohibit the production or dissemination of child pornography by means of computers, "`[w]e are deeply mindful of the principle that criminal statutes are to be strictly construed, but adherence to strict construction does not require an unreasonable interpretation, an interpretation that the legislature could not have intended.'" Hunt v. State, 642 So.2d 999,1028 (Ala.Cr.App. 1993), aff'd, 642 So.2d 1060 (Ala. 1994) (citations omitted). "Because the meaning of statutory language depends on context, a statute is to be read as a whole." Ex parteJackson, 614 So.2d 405, 406 (Ala. 1993). Under § 13A-1-6, Ala. Code 1975, criminal statutes "shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law." The significance of any term used in the statute "`depends on the context, the subject matter, and the object, purpose, or result designed to be accomplished by its use, and its meaning is to be determined from the facts and circumstances taken together in each particular case.'" Parker v.State, 648 So.2d 653, 656 (Ala.Cr.App. 1994) (citations omitted). Furthermore, "`"[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.'" Id. at 657 (citations omitted).
In light of the foregoing legal principles, we believe that, when the Legislature enacts a statute, it does so with the future in mind. However, it is impossible for the Legislature to consider every societal and technological change that may occur and the effect those changes may have upon the particular conduct it is seeking to regulate. We do not believe that the Legislature is required to amend the law to accommodate every advancement in technology. If that were the case, the law would be changing constantly and people would not know what conduct was prohibited by law. "`Absent a clear expression in the Statute to the contrary, we think the law applicable at the time of the offense was intended to govern the offense, the offender, and all proceedings incident thereto, and we so hold.'" Taylor v. State,586 So.2d 964, 965 (Ala.Cr.App. 1991) (quoting Bracewell v.State, 401 So.2d 123, 124 (Ala. 1979)). It is clear that when the Legislature enacted the child pornography statutes, its primary purpose was to prohibit the possession and production of child *Page 917 
pornography by any means. Therefore, we conclude that, although the term "matter," as it is defined in the child pornography statutes, does not explicitly refer to computer images, the language "electrical or electronic reproduction" of a "photographic or other visual reproduction" includes computer images depicting child pornography.
In reaching our decision, we have reviewed cases from the federal and state courts dealing with issues similar to those raised by the appellant. For example, in United States v. Vig,167 F.3d 443 (8th Cir. 1999), the United States Court of Appeals for the Eighth Circuit held that the possession of computer image files containing child pornography was prohibited by18 U.S.C. § 2252(a)(4)(b), even though the statute did not explicitly refer to child pornography contained on computers.[2] In so holding, the court reasoned that, although the statute does not define "other matter," the common, ordinary meaning of the word is "something which, at a minimum, must be capable of containing a visual depiction." Vig, 167 F.3d 447. Because the computer files Vig possessed contained one or more visual depictions of children involved in sexual acts, the court held that "other matter," as used in 18 U.S.C. § 2252(a)(4)(B), included computer images. Vig, supra; see also United States v. Hall, 142 F.3d 988 (7th Cir. 1998) (holding that the plain meaning of "other matter" under18 U.S.C. § 2252(a)(4)(b), prohibited the possession or dissemination of anything containing a visual depiction of a minor involved in sexual acts).
In State v. Cohen, 696 So.2d 435 (Fla.Dist.Ct.App. 1997), the Florida Court of Appeals for the Fourth District addressed an issue similar to the one raised by the appellant and the one raised in Vig and in Hall. In Cohen, the court held that the possession of computer images depicting children involved in sexual acts is punishable under Fla. Stat. ch. 827.071(5) (1995).[3] 696 So.2d at 436. The court stated that, although the statute did not explicitly prohibit computer images containing child pornography, it clearly prohibited the possession of a "representation or other presentation" that depicts a child engaged in any sexual act. The court further stated the dictionary definitions of "representation" and "presentation" encompassed computer images containing child pornography. The court also noted that the computer images containing child pornography were essentially copies or photographs of child pornography, which were explicitly prohibited by the statute.
Thus, we hold that § 13A-12-192, Ala. Code 1975, prohibits the possession and dissemination of child pornography by any means, including visual depictions of children engaged in sexual acts displayed on computers, computer diskettes, and the Internet. Clearly, "[t]he State's interest in protecting its children from cruel, physical, emotional, and physiological abuse occasioned by forcing a child to be the subject of child pornography far outweighs the appellant's interest in possessing such materials."Felton v. State, 526 So.2d 635, 637 (Ala.Cr.App. 1986), aff'd,526 So.2d 638 *Page 918 
(Ala. 1988). Based on the plain language of the statute under which the appellant was charged, the appellant had notice that the production of child pornography by any means was prohibited. Therefore, his arguments that the statute does not apply to the possession of computer images containing child pornography and that, therefore, his prosecution under the statute resulted in an ex post facto application of the law are without merit. Further, because the appellant was charged and prosecuted in accordance with the law governing child pornography, the trial court properly denied his motion to suppress the evidence seized from his house.
 II.
The appellant argues that the search warrant for his house and the affidavit in support thereof were invalid. Specifically, he contends that, because Officer Moon stated in his affidavit that he had "good reason to believe" that pornographic material containing images of children could be found in the appellant's home and did not specifically state that he had "probable cause" to believe such material could be found, the affidavit was insufficient to support the search warrant. However, he did not raise this particular argument at trial. Therefore, it is not preserved for our review.
The appellant also argues that the affidavit was insufficient because it was based on hearsay from Lloyd and because it did not reflect that Lloyd was a reliable informant. We have previously held that "`[h]earsay information may serve as a basis for an affidavit, and may be used to determine probable cause for the issuance of the search warrant.'" Moseley v. State, 570 So.2d 719,721 (Ala.Cr.App. 1990) (quoting Satterwhite v. State,364 So.2d 359, 360 (Ala. 1978)). See also Witcher v. State, 629 So.2d 71,73-74 (Ala.Cr.App. 1993); Mauldin v. State, 402 So.2d 1106
(Ala.Cr.App. 1981). Furthermore, where, as here, an ordinary citizen informs the police that he has seen evidence of a crime or that someone has admitted involvement in a crime to him, he is presumed to be reliable, and an officer is not required to supply the magistrate with information explaining why he believes the citizen-informant to be reliable. Neal v. State, [Ms. CR-93-1208, August 22, 1997] 731 So.2d 609 (Ala.Cr.App. 1997), aff'd, [Ms. 1971139, January 8, 1999] 731 So.2d 621 (Ala. 1999);McCoy v. State, 651 So.2d 1149 (Ala.Cr.App. 1994); Womack v.State, 555 So.2d 299 (Ala.Cr.App. 1989) (holding that information from a citizen-informant who is an eyewitness to a crime is enough to support probable cause even without specific corroboration of reliability). Therefore, Officer Moon was not required to state why he believed Lloyd was reliable when applying for the search warrant. Accordingly, the appellant's contentions are without merit.
 III.
The appellant argues that his pretrial bail of $107,500 was excessive and violated § 15-3-2, Ala. Code 1975, and the Eighth Amendment to the United States Constitution. He also argues that his bail was well outside the recommended range set out in Rule 7.2, Ala.R.Crim.P.
 "`"Under the laws and practice in Alabama, habeas corpus is the proper remedy to challenge either the denial or excessiveness of bail." Clay v. State, 561 So.2d 1116, 1118
(Ala.Cr.App. 1990).' Burks v. State, 600 So.2d 374, 381
(Ala.Cr.App. 1991). This is the direct appeal of the appellant's conviction, not an appeal of the denial of a petition for a writ of habeas corpus. Since the record does not contain a petition for a writ of habeas corpus, this issue is procedurally barred from appellate review. Pate v. State, 601 So.2d 210, 213 (Ala.Cr.App. 1992) (`An issue raised for the first time on appeal is not subject to review because it has not been properly preserved and presented.')."
Chandler v. State, 680 So.2d 1018, 1026 (Ala.Cr.App. 1996). Because the appellant did not raise his excessive bail claim in a petition for a writ of habeas corpus, this issue is procedurally barred from appellate *Page 919 
review. Furthermore, the record reflects that, pursuant to the appellant's motion for a reduction of bail, the trial court reduced the appellant's bail to $50,000. The appellant did not challenge the amount as reduced. Therefore, his complaint is untimely and is not preserved for our review.
 IV.
The appellant argues that the trial court erroneously denied his motion to dismiss the indictment against him because he was not granted a preliminary hearing until more than 21 days after his demand for such a hearing, thereby violating his right to a timely preliminary hearing under Rule 5.1, Ala.R.Crim.P. The appellant alleges that he requested a preliminary hearing on August 13, 1997, and again on October 7, 1997, and that a preliminary hearing was finally held on November 21, 1997. The record reflects that the appellant was indicted on December 15, 1997. However, the record does not include the appellant's alleged requests for a preliminary hearing, and it does not reflect whether a preliminary hearing was held on the date he alleges.
 "`It is the appellant's duty to provide this court with a complete record on appeal.' McCray v. State, 629 So.2d 729, 733 (Ala.Cr.App. 1993); Knight v. State, 621 So.2d 394
(Ala.Cr.App. 1993). `This court cannot predicate error on matters not shown by the record, nor can we presume error from a silent record.' Stegall v. State, 628 So.2d 1006, 1009 (Ala.Cr.App. 1993); Smelcher v. State, 520 So.2d 229
(Ala.Cr.App. 1987); Abbott v. State, 494 So.2d 789
(Ala.Cr.App. 1986). `Where the record is silent on appeal, it will be presumed that what ought to have been done was not only done, but rightly done.' Stegall, 628 So.2d at 1009; Jolly v. State, 405 So.2d 76 (Ala.Cr.App. 1981)."
Jordan v. City of Huntsville, 667 So.2d 153, 155-56 (Ala.Cr.App. 1995). Because the record is silent regarding the appellant's alleged requests for a preliminary hearing, we presume that the trial court did not unreasonably delay the appellant's preliminary hearing. Furthermore, there is an implied presumption that a preliminary hearing not held at the proper time was justifiably postponed by the trial court. State v. Richburg, 42 Ala. App. 495,168 So.2d 628 (Ala.App. 1964); Anderson v. State, 240 Ala. 169,198 So. 169 (1940). Moreover, the appellant does not have an absolute right to a preliminary hearing under Alabama law.Waldrop v. State, 523 So.2d 475 (Ala.Cr.App. 1987), cert. denied, 488 U.S. 871, 109 S.Ct. 184, 102 L.Ed.2d 154 (1988);Copeland v. State, 455 So.2d 951, 955 (Ala.Cr.App.), cert. denied, 455 So.2d 956 (Ala. 1984). Therefore, the trial court properly denied the appellant's motion to dismiss on this ground.
 V.
The appellant argues that his indictment should have been dismissed because the Sheriff of Etowah County, Alabama, did not notify the circuit court when he had been incarcerated for more than 90 days.[4] The purpose of Rule 7.4 is to apprise the court of the hold-over status of a prisoner so that it can review and, if need be, modify the conditions of the prisoner's release.See Rule 7.4, Ala.R.Crim.P. committee comments. However, Rule 7.4 *Page 920 
does not provide that the accused's indictment should be dismissed if the court is not notified that the accused is held in custody over 90 days. Further, "`[t]he remedy for illegal pretrial detention, other than pretrial release, may be the suppression of any evidence obtained as a result of that illegal detention — not the dismissal of the charge against the accused.'" Taylor v. State, 589 So.2d 804, 806 (Ala.Cr.App. 1991) (quoting Speers v. State, 545 So.2d 247, 250 (Ala.Cr.App. 1989)). Thus, the appellant's argument is without merit.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur.
[1] Although the appellant was charged with the unlawful production of child pornography under § 13A-12-197, in addition to being charged with violations of § 13A-12-192(a) and (b), we will not review his constitutional challenge to § 13A-12-197 because that charge was nol-prossed.
[2] That section, before recent amendments, provided, in pertinent part:
"Any person who
". . . .
 "(B) knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if:
 "(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
 "(ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section."
[3] That statute provides, in pertinent part, that "[i]t is unlawful for any person to knowingly possess a photograph, motion picture, exhibition, show, representation, or other presentation which, in whole or in part, he knows to include any sexual conduct by a child."
[4] The appellant relies on Rule 7.4(c), Ala.R.Crim.P., to support his argument. However, Rule 7.4(c), Ala.R.Crim.P., does not require officials having custody of incarcerated defendants to notify the circuit court once a defendant has been incarcerated more than 90 days. Rather, it provides:
 "By the second day of each month, the officials having custody of defendants being held in jail pending trial or on extraordinary writs shall provide the presiding judge, the district attorney, and the clerk of the circuit court for the county in which such defendant is being held, the names of all defendants in their custody, the charge or charges upon which they are being held, and the date they were most recently taken into custody. The circuit court shall review the conditions of release for every defendant who has been in jail for more than ninety (90) days."
(Emphasis added.)