MAIN, Justice.
Luther Stancel Pate IV petitioned this Court for a writ of certiorari to review the judgment of the Court of Criminal Appeals, affirming Pate’s conviction for menacing. We granted Pate’s petition to consider, as questions of first impression, whether lawfully arming oneself is a “physical action” so as to fulfill an element of Alabama’s menacing statute, see § 13A-6-23(a), Ala.Code 1975, and whether the defense-of-premises statute, see § 13A-3-25, Ala.Code 1975, is applicable in this case. The Court of Criminal Appeals, in its unpublished memorandum, held that there was sufficient evidence of the “physical-action” element of menacing to present the question to the fact-finder. The Court of Criminal Appeals also held that Pate’s conduct was not excused by the defense-of-premises statute.[1] Pate v. City of Tuscaloosa (No. CR-10-0843, June 22, 2012), 144 So.3d 519 (Ala.Crim.App.2012) (table). For the reasons discussed below, we reverse and remand.

I. Factual Background and Procedural History

Pate leased a building he owned in Tuscaloosa to the owner of a restaurant called the Santa Fe Cattle Company (“Santa Fe”). The lease for Santa Fe was terminated for nonpayment of rent, and its parent company subsequently declared bankruptcy. Santa Fe closed on or around September 27, 2009. Santa Fe had been ordered to vacate the premises by September 29, 2009, but on September 30, 2009, Pate was alerted by one of his associates that Santa Fe employees were trespassing *735 on the property. Pate directed his associate to contact the police.
On September 30, Walter Bryan Hart, Reneta Lawless, and Joseph Thompson, all Santa Fe employees, were at the building leased from Pate. They had been instructed by their supervisors to oversee the removal of leased restaurant equipment that remained inside Pate’s building and also to clean the building in preparation for turning it over to Pate. One of Pate’s associates, Chris Dobbs, followed by several police officers, arrived at the property while Hart, Lawless, and Thompson were there. After Hart and others discussed their presence in the building with the police, the police determined that it was a civil matter and they were not going to get involved.
Shortly thereafter, Pate arrived at the building and ordered everyone to leave the premises. According to Hart and Thompson, when the police officers, who were still on the premises, seemed reluctant to get involved, Pate told them that if they were unable to prevent these people from trespassing on his property, he had a shotgun in his truck and he could get rid of the trespassers himself. At some point, the police did ask Hart and the other Santa Fe employees to leave the premises. Everyone initially obliged and left, but Hart reentered the premises for the purpose of, according to his testimony, retrieving his personal laptop computer. Pate, who had walked to the back of the premises to assess the damage to the premises after Hart and the others had initially left, returned to the front area where he saw Hart, once again, inside the premises.
According to Hart, Pate yelled at him and told him to get out of the building or he was going to “stomp [Hart’s] a * Hart said that Pate continued yelling at him as he walked outside. Hart testified that he went straight to his car, got in, and looked up to see Pate standing in front of his car pointing a shotgun at him and telling him to get off his property. Hart indicated that he left as quickly as possible because he was afraid Pate was going to hurt him physically.
Pate’s version was that, when he returned to the front of the building and noticed Hart, he sent Dobbs to summon the police, who were still in another part of the building. Pate said that he ordered Hart, once again, to leave his property. Pate testified that Hart began to argue with him and then turned and proceeded toward his vehicle with Pate following behind him. As Hart walked toward his vehicle, Pate said that he went to his truck to retrieve his shotgun. Although Hart testified that Pate aimed the gun at him, Pate denied ever pointing the gun at Hart and stated that he only motioned with a pointing finger for Hart who was in his car, to leave the premises while Pate was holding the gun pointed down toward the ground.
Thompson testified, in pertinent part, that he, Lawless, and Hart left the restaurant as Pate and the officers requested, but after they left Hart told Thompson and Lawless that he was going back inside to get his laptop. Then, according to Thompson, as he and Lawless walked to their vehicle, Hart walked back toward the restaurant and yelled for the officers to get his computer. When Hart walked out of the restaurant the second time, Thompson saw Pate go to his truck and get a shotgun out of his truck. Thompson testified that Pate held the gun in an upright position and pointed his finger at Lawless and Thompson, motioning for them to leave the property. According to Thompson, as Lawless started the vehicle, Pate directed his attention to Hart. Thompson stated that Pate lowered the gun to his side when *736 the police came out of the building into the parking lot.
According to Officer R.B. Phillips of the Tuscaloosa Police Department, one of the officers who responded to the call made by Pate’s employee, Pate was very angry and agitated when he arrived at the restaurant. Officer Phillips stated that Pate was yelling and saying that he wanted everybody out of the building. Officer Phillips testified that Pate indicated that he had a gun in his truck and that if the police could not get everybody out that he would “take care” of it. Officer Phillips testified that he never saw Pate point the shotgun anywhere but toward the ground. Officer Phillips said that he eventually took the shotgun from Pate. Tuscaloosa Police Officer Jeremy Todd testified that Pate stated that if the police could not get Hart and the others out of his building that he would get his gun from his truck and take care of the situation himself. Officer Todd also stated that when he saw Pate the shotgun was angled toward the ground.[2]
Pate was charged with and convicted in the Tuscaloosa Municipal Court of menacing, a violation of Tuscaloosa City Ordinance § 17-1 and § 13A-6-23, Ala.Code 1975. Pate appealed to the Tuscaloosa Circuit Court for a trial de novo. After a bench trial, Pate was again convicted of menacing. The trial court stated:
“THE COURT: But I assume that the hunter’s position is that you did not — it was not pointed. So there’s some dispute regarding whether or not you actually pointed it at Mr. Hart. However, the statute states that if you intentionally place or attempt to place another person in fear of imminent serious physical injury by a physical action that that still amounts to the crime of menacing. By your testimony, by getting the gun and by your testimony to the effect that he was getting away rapidly because he was scared based upon you getting the gun, that would be physical action which the Court is of the opinion would amount to the crime of menacing.
“And so for that reason, the Court finds you guilty of the crime of menacing.”
(Emphasis added.)
The trial court sentenced Pate to 60 days in the municipal jail but suspended the sentence and placed Pate on probation for one year. The trial court also ordered Pate to pay fines and other fees. Pate appealed to the Court of Criminal Appeals. The Court of Criminal Appeals affirmed the conviction, without an opinion. Pate v. City of Tuscaloosa (No. CR-10-0843, June 22, 2012), 144 So.3d 519 (Ala.Crim.App.2012) (table). This Court granted certio-rari review.

II. Analysis

Although this Court recognizes that this case involves the interplay of Alabama’s menacing statute, § 13A-6-23(a), Ala.Code 1975, and a property owner’s right to defend his premises from a trespasser under § 13A-3-25, Ala.Code 1975, we need not *737 reach both of these issues to resolve this matter. Because of our construction of the menacing statute, we pretermit consideration of the defense-of-premises issue. Pate argued below, as he does on certiora-ri review, that the trial court should have granted his motion for a judgment of acquittal because, he argues, merely arming himself, without any accompanying action, is not a “physical action” that could form the basis of a charge of menacing.
Menacing is defined in § 13A-6-23(a), Ala.Code 1975: “A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.” (Emphasis added.) The Commentary to § 13A-6-23 states that menacing encompasses the situation where “ ‘physical injur/ is neither inflicted nor intended.” There is no statutory definition for the term “physical action.” In this case, the trial court found that getting the gun was sufficient “physical action” to constitute the offense of menacing.
In examining the menacing statute, we must apply the following principles of statutory construction:
“ ‘ “[I]t is well established that criminal statutes should not be ‘extended by construction.’ ” ’ Ex parte Mutrie, 658 So.2d 347, 349 (Ala.1993) (quoting Ex parte Evers, 434 So.2d 813, 817 (Ala.1983), quoting in turn Locklear v. State, 50 Ala.App. 679, 282 So.2d 116 (1973)).
“ ‘A basic rule of review in criminal cases is that criminal statutes are to be strictly construed, in favor of those persons sought to be subjected to their operation, i.e., defendants. Schenher v. State, 38 Ala.App. 573, 90 So.2d 234, cert. denied, 265 Ala. 700, 90 So.2d 238 (1956).
“‘Penal statutes are to reach no further in meaning than their words. Fuller v. State, 257 Ala. 502, 60 So.2d 202 (1952).
“‘One who commits an act which does not come within the words of a criminal statute, according to the general and popular understanding of those words, when they are not used technically, is not to be punished thereunder, merely because the act may contravene the policy of the statute. Fuller v. State, supra, citing [Young v. State ], 58 Ala. 358 (1877).
“ ‘No person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused. Fuller v. State, supra.’
“Clements v. State, 370 So.2d 723, 725 (Ala.1979) (quoted in whole or in part in Ex parte Murry, 455 So.2d 72, 76 (Ala.1984), and in Ex parte Walls, 711 So.2d 490, 494 (Ala.1997)) (emphasis added).
“ ‘ “Statutes creating crimes are to be strictly construed in favor of the accused; they may not be held to apply to cases not covered by the loords used....” United States v. Resnick, 299 U.S. 207, 209, 57 S.Ct. 126, 127, 81 L.Ed. 127 (1936). See also, Ex parte Evers, 434 So.2d 813, 816 (Ala.1983); Fuller v. State, 257 Ala. 502, 60 So.2d 202, 205 (1952).’
“Ex parte Jackson, 614 So.2d 405, 406 (Ala.1993) (emphasis added). ‘[T]he fundamental rule [is] that criminal statutes are construed strictly against the State. See Ex parte Jackson, 614 So.2d 405 (Ala.1993).’ Ex parte Hyde, 778 So.2d 237, 239 n. 2 (Ala.2000) (emphasis added). The ‘rule of lenity requires that “ambiguous criminal statute[s] ... be construed in favor of the accused.” ’ Castillo v. United, States, 530 U.S. 120, 131, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000) (paraphrasing Staples *738 v. United States, 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)).”
Ex paiie Bertram, 884 So.2d 889, 891-92 (Ala.2003).
“ ‘Moreover, “one ‘is not to be subjected to a penalty unless the words of the statute plainly impose it,’ Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 [ (1905) ]. ‘[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.’ United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221-222, 73 S.Ct. 227, 229-230, 97 L.Ed. 260 [ (1952) ].” United States v. Campos-Serrano, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971).’
“[United States v.] Bridges, 493 F.2d [918] at 923 [ (5th Cir.1974) ].
“ ‘Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning.’ Alabama Farm Bureau Mut. Casualty Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). The general rule of construction for the provisions of the Alabama Criminal Code is found in Ala.Code 1975, § 13A-1-6: ‘All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in section 13A-1-3.’ Among the purposes stated in § 13A-l-[3] is that found in subsection (2): ‘To give fair warning of the nature of the conduct proscribed.’ ”
Carroll v. State, 599 So.2d 1253, 1265 (Ala.Crim.App.1992). In determining the proper application of a statute, this Court has a duty to “ ‘ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained.’ ” Hunt v. State, 642 So.2d 999, 1028 (Ala.Crim.App.1993), affd, 642 So.2d 1060 (Ala.1994) (quoting Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985)); see also Rutledge v. State, 745 So.2d 912 (Ala.Crim.App.1999).
Consistent with the foregoing and applying the principles of statutory construction, we conclude that Pate’s getting the gun, without more, was not sufficient to establish the physical-action element of menacing. Therefore, we conclude that the Court of Criminal Appeals erred in determining that there was sufficient evidence of the physical-action element of menacing. In light of our resolution of the first ground on which we granted certiora-ri review — whether getting the gun constituted “physical action” under the facts of this case — we pretermit discussion of the second ground on which we granted certio-rari review — whether the defense-of-premises statute is applicable in this case.

III. Conclusion

For the foregoing reasons, we reverse the judgment of the Court of Criminal Appeals and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART and BOLIN, JJ., concur.
WISE, J., concurs specially.
PARKER, J., concurs in the result.
MURDOCK and SHAW, JJ., dissent.

. We note that the Court of Criminal Appeals affirmed the trial court’s judgment without an opinion. Presiding Judge Windom and Judge Kellum recused themselves. On May 16, 2012, then Chief Justice Charles R. Malone of the Alabama Supreme Court appointed retired Alabama Supreme Court Associate Justice Patricia M. Smith to sit specially on this case pursuant to § 12-13-17, Ala.Code 1975. Judge Welch, Judge Joiner, and Special Judge Smith concurred in affirming the menacing conviction. Judge Burke dissented, without writing.

. A video disc containing the videos from four security tapes (three from the security camera at Santa Fe and one from a camera located in the police vehicle) was introduced into evidence at the trial, showing the sequence of events that occurred after Hart reentered the building. The tapes show Hart leaving the building with Pate and Dobbs behind him. Dobbs then goes back inside while Pate walks toward his truck, and Hart enters his vehicle. Pate retrieves his shotgun from his truck, and Hart is backing his vehicle out of his parking space while Pate begins walking toward Hart's parking space. The shotgun is in Pate’s right arm pointed at the ground. Hart is shown backing out and driving toward the parking lot exit before Pate even reaches the vicinity of Hart’s vehicle. No police officer is shown as being present in the vicinity until after Hart had left the parking lot.