PER CURIAM.
Phillip Allen Moore was convicted, following a jury tidal, of menacing. See § 13A-6-23, Ala.Code 1975. The circuit court sentenced Moore to 90 days in the county jail and placed him on supervised probation for 12 months. On the authority of Ex parte Pate, 145 So.3d 733 (Ala.2013), we reverse the conviction and render, a judgment of acquittal in favor of Moore.

I. Factual Background, and Procedural History

On June 23, 2012, Jeffrey West and his wife Kimberly were at a classic car show at Bama Trim on Highway 11 in Tuscaloosa. Moore, his brother Melvin, and Melvin’s girlfriend Beth Dove were drinking *1001 alcoholic beverages and listening to music on a lot at an RV park adjacent to the Bama Trim property.
At some point after the car show had begun, the Wests left the car show in a black Trans Am automobile, one of two cars the Wests had brought to the show. The Wests were going to their house to get their teenage daughter Rachel. As they were leaving, Dove and the Moores yelled at Kimberly, who was driving, to “spin the tires.” Kimberly, however, did not know how to “spin the tires,” so she did not.
After going to his house, West returned alone in the Trans Am to the car show. He parked the car at the show, got out of the vehicle, and began wiping dust off the car to make it presentable for the car show. The Moores and Dove, who were still listening to music in the RV park, turned the music up to the point that it could be heard at the car show. West testified that he recognized the song that was playing — which he identified as “You Can Suck My Dick” by the musical rap artist Eminem. West testified that the lyrics of the song were obscene and, in his opinion, inappropriate for women or children to hear. West also saw the Moores and Dove making lewd hand gestures during the song; specifically, they were pointing to their respective genital areas.
West, who had difficulty walking because of a recent back surgery, put down his dusting cloth and started walking toward the RV park. He walked to the road separating Bama Trim and the lot Moore’s camper was on. Moore moved to the door of his camper and picked up a metal pipe that was about three feet long.' Moore began walking toward. West, and West stopped in the middle of the road. West put his hands up and said, “Look, all I wanted to do is ask you if you would mind turning your music down.” In response, Moore said, “Yes, I do fucking mind.” Moore then “raised [the metal pipe] above his shoulders kind of like a batter.” Moore, however, did not leave the RV lot, and he remained about 15-20 feet away from West.
West testified that he turned around to walk away because he was afraid of being hit with the pipe. In the meantime, Melvin had gone to get his car, with which he struck West.[1] West was thrown onto the hood and windshield of the car. Kimberly and Rachel had by this time arrived at the car show. Kimberly and Rachel both saw Moore raise the pipe, and they witnessed Melvin strike West with Melvin’s car.
Moore was charged with menacing. After he was found guilty in the Tuscaloosa County District Court, Moore appealed to the Tuscaloosa Circuit Court, and his case was tried before a jury. As noted above, the jury returned a verdict of guilty, and Moore was sentenced to 90 days in the county jail and placed on supervised probation for 12 months.

II. Analysis

Moore challenges, as he did in the circuit court, the sufficiency of the State’s evidence to support his conviction for menacing. Among other things, he argues that the State presented insufficient evidence to indicate that Moore’s actions constituted “physical action” as that phrase in § 13A-6-23, Ala.Code 1975,[2] was con *1002 strued by the Alabama Supreme .Court in its opinion in Ex parte Pate, supra. Constrained by the Court’s decision in Pate, we agree.
In Pate, the defendant, Luther Stancel Pate IV, owned' property on which was operated a restaurant leased by the Santa Fe Cattle Company (“Santa Fe”). The lease was terminated for nonpayment of rent, and when Pate discovered that Santa Fe employees were trespassing on the property one day after they were supposed to have vacated the property, the police were notified. Pate arrived at the property after the police had arrived, and, once “the police determined that it was a civil matter and they were not going to get involved,” Pate “ordered everyone' to leave the premises.” Pate told the police “that if they were unable to prevent thesé people from trespassing on his property, he had a shotgun in his truck and he could get rid of the trespassers himself.” 145 So.3d at 734-35.
The Santa Fe employees left the building, but one employee — Walter Bryan Hart — reentered the premises to get his laptop' computer. When Pate realized that Hart had reentered the premises, he “yelled at [Hart] and told him to get out of the building or he was going to ‘stomp [Hart’s] a * *.’ ”
“Hart said that Pate continued yelling at him as he walked outside. Hart testified that he went straight to his car, got in, and looked up to see Pate standing in front of his car pointing a shotgun at him and telling him to get off his property. ' Hart indicated that he left as quiekly as possible because he was afraid Pate was going to hurt him physically.”
145 So.3d at 735. Other witnesses — including Pate — testified, however, that Pate did not point the gun at Hart.
In reversing Pate’s conviction, the Alabama Supreme Court decided, as Pate had stated the issue, that Pate’s “merely arming himself, without any accompanying action, [was] not a ‘physical action’ that could form the basis of a charge of menacing.” 145 So.3d at 737. The Court, however, did not provide any analysis to explain either its construction of the phrase “physical action” or why Pate’s actions in “arming himself’ did not qualify as “physical action.”[3] Consequently, we are. left with little guidance as to the meaning of the phrase “physical action” in § 13A-6-23 and whether Moore’s actions in. the present case qualify as “physical action” for purposes of the offense of menacing.
In his brief on appeal, Moore offers the following attempt to reconcile Pate with existing caselaw'ánd apply it to 'the instant case:
“[Pate] set the precedent that simply arming oneself with a' gun, without more, does not establish the physical action necessary for the menacing statute.
“Earlier Alabama cases illustrate what the ‘more’ is to which' the Supreme ■ Court alludes. [Justice- Wise’s] concurring ... opinion and [Justice Murdock’s] dissenting opinion in Ex parte Pate discuss Hiler [v. State, 44 So.3d 535 (Ala. Crim.App.), rev’d on other grounds, 44 So.3d 543 (Ala.2009),] extensively. In
*1003 Hiler, officers were called out to a domestic dispute. Once they arrived, the officers encountered Hiler at an outbuilding behind the main home. As officers attempted to approach Hiler, Hiler held up .a device and told the officers that it was a bomb. At one point during the interaction, Hiler laid the device down, but then sprinted back toward it when officers attempted to tase him. The claim of a bomb, in addition to Hiler’s physical movements, created a reasonable fear of imminent serious physical injury because a bomb, by its nature, can cause immediate harm from a distance. Hiler was convicted of menacing.
“A pipe, on the other hand, could not cause such immediate harm as a gun or a bomb. Many other cases involving an upheld conviction for menacing, involve defendants firing guns or pointing guns, getting within very close distance with the victim or rapidly closing the distance between the Defendant, the weapon, and the victim, and oral representations by the Defendant. This is the ‘more’ that the Supreme Court would require in order to find sufficient evidence for physical action. See Walker v. State, [137 So.3d 943] (Ala.Crim.App.2013) (defendant fired gun); .,. Hiler v. State, 44’ So.3d 535, 537 (Ala.Crim.App.2009) (defendant told officers the device was a bomb and ran toward the explosive device); Oliver v. City of Opelika, 950 So.2d 1229, 1233 (Ala.Crim.App.2006) (defendant pointed gun); Hoffman v. City of Montgomery, 863 So.2d 127, 128 (Ala.Crim.App.2003) (defendant pointed gun at victim with only a desk separating them); Johnson v. State, 651 So.2d 1085, 1086 (Ala.Crim.App.1994) (defendant pointed gun at victim and said ‘I’ll kill you’ and defendant fired gun); Mosley v. City of Auburn, 428 So.2d 165,166 (Ala.Crim.App.1982), superseded on other grounds, Mason v. City of Vestavia Hills, 518 So.2d 221 (Ala.Crim.App.1987) (defendant threatened to kill the victim along with slashing at the victim with a knife and pushing the victim).
“In the light - most favorable . to the State, [Moore’s] getting a pipe, walking toward [West], and holding it like a batter while maintaining a distance of 15-20 feet, is not sufficient for the physical action element of the menacing statute. If simply getting a gun and walking toward someone, as Stan Pate did, is not enough for physical action, then surely picking up a pipe and walking toward the edge of one’s property is not physical action for the purposes of the menacing statute. [Moore’s] case is distinguishable from Hiler and other menacing cases because it does not provide the ‘more’ that is illustrated in those cases. [Moore] did not throw the pipe. [Moore] did not threaten to throw, the pipe. [Moore] did not run or sprint at West with the pipe. [Moore] did not claim that the pipe could do more than it was designed tó do. There was insufficient evidence Of physical action.”
Moore’s brief, pp. 15-18.
In its brief, the State does hot address Ex parte Pate. It does, however, state:
“Moore chose to be poised in such a position so as to strike West. Moore argues that he did not intend to put West in imminent fear because the testimony was that he was 15-20 feet away. However, this argument is not credible. Moore and West were facing each other. In the same way a bullet from a gun dan inflict lethal damagé by the bullet traveling in a millisecond, Moore was in a position to inflict lethal damage because he was capable of striking West and crushing his skull in about 3 or 4 seconds. Moore, in the position in which he *1004 had the pipe also could have thrown this weapon at West.”
State’s brief, pp. 14-15.
Before Pate, we would have been inclined to recognize the inherent logic of the State’s position as set forth above. We are, however, bound by the Pate decision, and we therefore must agree with Moore’s position that there was insufficient evidence of the physical-action element of menacing.

III. Conclusion

Moore’s conviction is reversed, and a judgment of acquittal is rendered in his favor.
■REVERSED AND JUDGMENT RENDERED.
WELCH, KELLUM, and JOINER, JJ., concur. WINDOM, P.J., dissents., BURKE, J., dissents,, with opinion.

. In a motion in limine filed in the circuit court, Moore asserted that Melvin was "charged with attempted murder” as a result of striking West with his car. That same motion asserts that Dove was charged with second-degree assault.

. Section 13A-6-23, Ala.Code 1975, provides: "A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.”

. Justice Murdock, in his dissenting opinion, stated:.
"The analysis of the main opinion consists mostly of a long quote concerning principles of statutory construction. Following this quote the main opinion simply states that, in light of these principles, the defendant's actions in this case cannot be considered menacing. There is no discussion of the quoted principles and specifically how they mandate such a conclusion."
Pate, 145 So.3d at 741 n. 5 (Murdock, J., dissenting).