MURDOCK, Justice
(dissenting).
I write separately for what I believe to be two important reasons. First, it is particularly important to note, as Justice Shaw correctly explains in his dissent, that the main opinion in Ex parte Pate, 145 So.3d 738 (Ala.2013), was a plurality opinion in which only four Justices concurred and is not binding precedent. 183 So.3d at 1008 n. 5 (Shaw, J., dissenting). The Court of Criminal Appeals concluded its analysis in this case by stating that, if not for the decision in Pate, it would not have reversed the trial court’s judgment convicting Phillip Allen Moore of the offense of menacing. Moore v. State, 183 So.3d 1000, 1004 (Ala.Crim.App.2014). That court states, however, that it was “bound by the Pate decision.” 183 So.3d at 1004. For the reasons explained by Justice Shaw in his separate writing, that statement is incorrect.
The other reason I write separately is to note that this is the first “menacing case” to come before this Court since Pate was decided and that the facts presented and the result reached in this case corroborate the concern I expressed in Pate as to “the continued viability of the crime of menacing” if Pate were to be followed. 145 So.3d at 740 (Murdock, J., dissenting). Indeed, in contrast to Justice Shaw (whose views generally coincide with mine), I believe the present case presents no less a manifestation, and perhaps an even stronger manifestation, of this concern than do the facts and the result in Pate.
Menacing is a Class B misdemeanor and is defined simply as follows: “A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury.” § 13A-6-23(a), Ala.Code 1975. To prove that the misdemeanor of menacing has occurred the State must prove simply (1) some “physical action,” by which (2) the defendant “intentionally place[d] or attempt[ed] to place” another in fear of “imminent serious physical injury.”
The main opinion in Pate took the position that, as a matter of law, the act of retrieving a firearm did not. constitute “physical action” for purposes of satisfying the first element of menacing. Obviously, this is a position with which I strenuously disagreed in Pate and still do.[1]
The facts in Pate (and in turn the factual parallels between Pate and the present case), however, were not limited to the bare act of arming one’s self. In Pate, after verbally threatening the victim, the defendant did in fact engage in the “physical action” of walking to his truck and retrieving a shotgun from that vehicle. In addition, however, the defendant in Pate then engaged in the further “physical action” of turning and beginning to advance toward the victim with the weapon in hand. Ex parte Pate, 145 So.3d at 736 n. 2. Here, *1007 Moore likewise, after retrieving his weapon, turned and advanced toward the victim with the weapon in hand. Furthermore, the facts of both cases include very explicit, verbal statements .made by the, defendants that provide context for their physical actions and from which the jury in each case reasonably could have drawn inferences as to the presence of the state of mind required for an act of menacing. See Ex parte Pate, 145 So.3d at 736; id. at 741 (Murdock, J., dissenting); Moore v. State, 183 So.3d at 1005; id. at 1005 (Burke, J., dissenting).[2]
Bearing in mind the deference accorded the verdict of jurors who have heard and assessed the testimony of witnesses appearing before them, as well as the quantum of proof required in a criminal case, the essential question is whether there is substantial evidence from which the jurors reasonably could have found thát Moore intended or attempted to place the victim in fear of imminent serious injury. In the context of preexisting conflict with the victim, a man retrieves a 3-foot-long metal pipe and then turns and advances to a face-to-face confrontation within 15 to 20 feet of the victim while holding the 3-foot-long pipe in a threatening position (“kind of like a batter” according to one witness). Fifteen to 20 feet simply is not that much distance for an angry man postured as described with a 3-foot-long metal pipe. As the State explained in a passage in its brief quoted with approval by the majority opinion in the Court of Criminal Appeals:
“ ‘Moore was in a position to inflict lethal damage because he was capable of striking West and crushing his skull in about 3 or 4 seconds. Moore, in the position in which he had the pipe, also could have thrown this weapon at West.’ ”
Moore, 183 So.3d at 1003-04 (quoting the State’s brief, p. 15).
Considering the evidence of Moore’s physical actions, Moore’s demeanor, including the verbal abuse that preceded and accompanied,his physical actions, and other evidence of the volatility of the situation heard by the jury, I cannot say — or more appropriately, I do not believe the Court of Criminal'Appeals was correct in saying— that, as a matter of law, reasonable jurors were foreclosed from finding that Moore engaged in an act of “menacing.” Because I believe that the petition presents a- probability of merit, I respectfully dissent from this Court’s ' decision today • not to grant that petition.

. The judges of the Court of Criminal Appeals, as well as Justice Shaw, also disagree with this position. Both judges of the Court of Criminal Appeals who dissented, Judge Windom and Judge Burke, obviously disagree. See, e.g., Moore, 183 So.3d at 1005 (Burke, J., dissenting). And the other three judges on the Court of Criminal Appeals concurred in a per curiam opinion that states that, "[bjefore Pate,” they too "would have been inclined to recognize” what they refer to as "the inherent logic” of the State's position on what constitutes physical action, as well as the type of showing that will satisfy the state-of-mind element of menacing. See Moore, 183 So.3d at 1004.

. In the present case, the jury’s assessment of both the physical-action element and the state-of-mind element could have been influenced by the general environment ¿nd state of conflict created by Moore and his cohort, including the facts that Moore, as well as his cohort and the cohort's girlfriend, had been drinking; that Moore purposefully played music with obscene lyrics loudly enough to be heard by the victim and his wife and teenage daughter; that Moore and his cohort were making lewd gestures directed at the victim; and that Moore’s cohort contemporaneously caused physical injury to the victim by running into him with a car.