Rel: December 16, 2022

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

————————————————

## CR-20-1012

————————————————

**Amber Nicole Douglas**

**v.**

**City of Mobile**

**Appeal from Mobile Circuit Court**
**(CC-21-685)**

McCOOL, Judge.

Amber Nicole Douglas appeals her conviction in the Mobile Circuit Court for menacing, see § 13A-6-23, Ala. Code 1975, and her resulting

sentence of 30 days in the Mobile County Metro Jail.[1] Her sentence was suspended, and she was ordered to serve six months on probation. She was also ordered to pay a $100 fine, court costs, and $25 to the Victims Compensation Fund. Douglas was also ordered to have no contact with the Purple Cow store or the victim.

The following evidence was presented at trial:

Nyandra Merery, an employee of the Purple Cow gasoline service station and convenience store in Mobile, testified that she was working at the Purple Cow on July 1, 2019. Merery stated that there had recently been potential tension and discussion among the employees of the Purple Cow based on some prior incidents that had occurred between an employee's girlfriend and other employees. According to Merery, another employee at the Purple Cow, Bobby Jet, was in a relationship with Douglas. Merery testified that Douglas did not want Bobby working with female cashiers and that Douglas had been coming to the Purple Cow and "getting into … altercations." (R. 9.) Merery testified that, because of the tension caused by Douglas, the owner of the store viewed recordings from

---

[1]Douglas was originally charged and convicted in the Mobile Municipal Court of the offense of menacing. On March 22, 2021, Douglas filed a notice of appeal for a trial de novo in the Mobile Circuit Court.

the video camera at the store. As a result, some time before July 1, the store owner held an employee meeting about the matter and banned Douglas from entering the store.

Merery testified that on the evening of July 1, 2019, Bobby was assigned to relieve her from her shift. That evening, when she was supposed to be getting off work, Merery observed Bobby and Douglas arguing outside the front door of the store. Merery stated that Bobby then "slammed the door [open]" and walked to the back of the store. Douglas then opened the door and began stepping in and out of the door repeatedly, which caused the "notification noise" to keep alarming. (R. 14.) According to Merery, Douglas started screaming, "Hello. Hello. I need some fucking gas. I know you fucking hear me." (R. 14.) Merery stated that Bobby was ignoring Douglas. Merery then walked to the back of the store to use the restroom before leaving the store. When Merery returned from the restroom, Douglas was no longer in the store. Merery stated that she then clocked out, retrieved her belongings, and went out the back door to her vehicle.

According to Merery, as she got into her vehicle and "hit reverse," Douglas "swung [her vehicle] around behind [Merery's vehicle]." (R. 16.)

Merery stated that Merery's vehicle door was still open at this time. Douglas began screaming at Merery. Merery said that Douglas's vehicle was "right behind" Merery's vehicle and that Douglas had Merery's vehicle blocked in. (R. 17.) According to Merery, because the driver side of Douglas's vehicle was closest to Merery's vehicle, the distance between Douglas and Merery was approximately the distance between Merery's driver door to the back of Merery's vehicle. Merery testified that Douglas was screaming, "Bitch, what was you laughing at? Bitch, I will hit you upside the head with this – Bitch, I will crack your fucking skull and hit you upside the head with this tire iron." (R. 18.) As Douglas was screaming, she was waving an "iron object" out of her window. (R. 18.) Douglas did not get out of her own vehicle.

Merery stated that she yelled, "[Douglas,] what's your problem?" (R. 18.) However, Douglas pulled away. Merery then started to close her door and put her vehicle into reverse, but Douglas returned and blocked Merery in again with her vehicle. According to Merery, Douglas blocked her in "six or seven times." (R. 19.) Merery called the police. Merery testified that she was scared for her safety because she thought Douglas was going to hit her with the tire iron. When Merery got on the phone

4

with the police, she was able to drive to the front of the store once Douglas's vehicle was not behind her vehicle. Merery testified that, as she was driving to the front of the store to "go to an open area and go underneath the gas pump" area, Douglas "almost hit [Merery's vehicle] with her car." (R. 21.) Merery stated that if she had not hit the gas pedal "real fast," Douglas "would have smashed into [her vehicle.]" (R. 21.) Douglas then drove off and Merery stayed on the phone with the police dispatcher until the police arrived at the scene.

Merery testified that, when the officer arrived to the scene, he talked to her, viewed the video evidence from the store's surveillance cameras, and then "authorized a complaint for harassment"; however, when Merery went to the magistrate's office to obtain the warrant as directed by the officer, the magistrate changed the charge "from harassment to menacing." (R. 24.)

The City rested its case and the defense moved for a judgment of acquittal, claiming that there was no evidence indicating that Douglas took any physical action that would place Merery in fear of imminent serious physical injury. The court denied Douglas's motion for a judgment of acquittal.

Bobby Jet testified on Douglas's behalf. Bobby testified that he came into the store on the night of July 1, 2019, with Douglas and their child, who was in his baby carrier. Bobby denied arguing with Douglas. Bobby claimed that Douglas was standing at the counter talking to him when Merery came up to them and began "cursing" at Douglas. (R. 45.) Bobby claimed that Douglas and Merery both left out of the front door of the store. Bobby stated that Douglas placed the child back into their vehicle and got into her vehicle. He testified that Merery then went to the back of the store, got into her vehicle, and drove her vehicle to the front of the store where she pulled up behind Douglas's vehicle, blocking Douglas in. Bobby stated that he knows that there was not a tire tool in Douglas's vehicle. According to Bobby, before the July 1, 2019, incident, management had not told him that Douglas was banned from the store; rather, he claimed, management told him to "control [his] woman." (R. 50.)

Douglas also testified in her own behalf. She denied arguing with Bobby on the night of the incident, and she claimed that she went inside the store with her baby to get a drink. Douglas testified that she was at the counter talking to Bobby when Merery, who was on her way out the

6

front door, turned around and began cursing her. Douglas claimed that Merery threatened to get a taser out of her vehicle, so Douglas "ran out" the front door to her own vehicle, put her baby in her vehicle, and called 9-1-1 to report the threat. Douglas claimed that she pulled around to the back of the store to get Merery's license-plate number, but "did not pull up to block [Merery] in." (R. 57.) She claimed that her passenger side door was closest to Merery's vehicle, and that she "got [Merery's] license plate [information] real quick and went back to the same parking spot that [she] was in" at the front of the store. (R. 57.) Douglas claimed that she did not have a tire tool in her hands or in her vehicle. Douglas claimed that, after she had returned to the front of the store, Merery drove to the front of the store and blocked Douglas's vehicle in, requiring Douglas to "inch" back to try to get out of the parking spot. (R. 58.) She stated that she eventually called 9-1-1 again, told them that she had to leave because she was in fear for her life, and gave the officers her address and phone number to contact her.

At the conclusion of the trial, the circuit court found that Douglas was guilty of the charge of menacing. This appeal followed.

On appeal, Douglas's sole contention is that there was insufficient evidence presented to convict her of the offense of menacing because, she says, the City failed to establish that she used "physical action" and that she placed Merery in "fear of imminent serious physical injury." (Douglas's brief, at 8.)

Because this was a bench trial, the trial judge was the trier of fact. This Court has held:

> "'"When evidence is presented ore tenus to the trial court, the court's findings of fact based on that evidence are presumed to be correct," Ex parte Perkins, 646 So. 2d 46, 47 (Ala. 1994); "[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence," Bradley v. State, 494 So. 2d 750, 761 (Ala. Crim. App. 1985), aff'd, 494 So. 2d 772 (Ala. 1986); and we make "'all the reasonable inferences and credibility choices supportive of the decision of the trial court.'" Kennedy v. State, 640 So. 2d 22, 26 (Ala. Crim. App. 1993), quoting Bradley, 494 So. 2d at 761. "'"Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence."'" Ex parte Jackson, 886 So. 2d [155] at 159 [(Ala. 2004)], quoting State v. Hill, 690 So. 2d 1201, 1203 (Ala. 1996), quoting in turn Ex parte Agee, 669 So. 2d 102, 104 (Ala.1995).
>
> "'However, "[t]he ore tenus presumption of correctness applies to findings of fact, not to conclusions of law." City of Russellville Zoning Bd. of Adjustment v. Vernon, 842 So. 2d 627, 629 (Ala. 2002). "[T]he ore tenus rule does not extend to

cloak a trial judge's conclusions of law, or incorrect application of law to the facts, with a presumption of correctness." Eubanks v. Hale, 752 So. 2d 1113, 1144–45 (Ala. 1999). "'"[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment."'" Ex parte Jackson, 886 So. 2d at 159, quoting Hill, 690 So. 2d at 1203, quoting in turn, Ex parte Agee, 669 So. 2d at 104. Thus, we review the trial court's conclusions of law and its application of law to the facts under the de novo standard of review.'"

Bailey v. City of Ragland, 136 So. 3d 498, 502 (Ala. Crim. App. 2013), quoting Washington v. State, 922 So.2d 145, 157–58 (Ala. Crim. App. 2005).

Section 13A-6-23(a), Ala. Code 1975, provides that "[a] person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury." "Serious physical injury" is defined, in pertinent part, as "physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ."

Douglas relies on the Alabama Supreme Court's holding in Ex parte Pate, 145 So. 3d 733 (Ala. 2013) to support her contention that there was insufficient evidence establishing that she used "physical action" and

that she placed Merery in "fear of imminent serious physical injury." In Pate, the Alabama Supreme Court held that an appellant's arming himself, "without more, was not sufficient to establish the physical-action element of menacing." 145 So. 3d at 738. However, this case is distinguishable from Pate. In the present case, Douglas did not merely arm herself. Rather, evidence was presented that established that Douglas pulled her vehicle in behind Merery's vehicle, blocking Merery's vehicle into the parking space so that Merery could not leave. Merery testified that Douglas then rolled down her window, held a tire iron out of the window, and screamed at Merery that she would "crack [her] fucking skull and hit [her] upside the head with th[e] tire iron." (R. 18.) At the time, the distance between the women was the distance between Merery's open driver's door to the back of her vehicle. Although Douglas and Bobby provided evidence to the contrary, any "conflict between the State's evidence and that offered by the appellant [goes] to the weight of the evidence and [creates] questions of fact to be resolved by the [trier of fact]." Rowell v. State, 647 So. 2d 67, 69-70 (Ala. Crim. App. 1994). Therefore, considering all the evidence presented by the City, there was sufficient evidence to support the element of physical action for the

offense of menacing. Because the City established a prima facie case of menacing, we will not disturb the fact finder's determination of guilt.

Based on the foregoing, the judgment of the circuit court is affirmed.

AFFIRMED.

Windom, P.J., and Kellum, Cole, and Minor, JJ., concur.